# Charlestown.

## MAGERS *v.* EDWARDS'S ADM'R *et al.*

### Decided September 7, 1878.

1878
August Term.

1. In expounding a will, the court will make the amplest allowance for unskillfulness and negligence of the testator; technical informalities will be disregarded; the most perplexing complications of words and sentences will be carefully unfolded; and the traces of the testator's intention will be diligently sought out in every part of the instrument; and the whole carefully weighed together.

2. To aid in the true construction of the will, evidence may be received, and should be sought, of any facts known to the testator, which may reasonably be supposed to have influenced him in the disposition of his property, and of all the surrounding circumstances, at the time of making the will; but if, after resorting to all these means, the intention of the testator in a particular clause cannot be ascertained with reasonable certainty, conjecture ought not to be permitted to supply, what the testator has failed to indicate sufficiently; and he must be regarded as dying intestate, as to such subject.

3. If a bill seeks the judgment of the court, as to the meaning of the testator in a particular sentence in a will, which is so connected with other portions of the will, that it cannot be construed without construing such other portions, all parties, interested in the construction of such other portions of the will, should be made parties to such suit, before any construction is placed upon it by the court.

Appeal from a decree of the circuit court of Marshall county, rendered on the 11th day December, 1876, in a cause in chancery; in said court then pending, in which Martha Magers was plaintiff, and George Edwards, ad-

ministrator *c. t. a.* and others were defendants, allowed upon the petition of William H. Dorsey, David Magers and Thomas Dorsey.

Hon. Thayer Melvin, judge of the first judicial circuit, rendered the judgment complained of.

GREEN, PRESIDENT, furnishes the following statement of the case:

Joseph Magers, of Marshall county, West Virginia, died in the autumn of 1861. Shortly before his death, on the 9th day of April, 1861, he made his will, of which the following is a copy:

"I, Joseph Magers, of the county of Marshall, do make, ordain and publish, this my last will and testament, in manner following, to-wit:

"1st. I desire my farm on the hill to be rented out by my executor, hereafter named, and the rent to be applied to the benefit of my wife and my son Ezra Drummond, until he becomes of age.

"2d. I will, that my beloved wife, Martha, shall have two cows and one horse, best wagon and harness, and one buggy and harness, and all the grain, flour and meal that is on the premises; and give to her all the household and kitchen property and furniture, and all the hogs on the premises.

"3d. I desire the remainder of my stock and property shall be sold by my executor, and the proceeds of the same, after the settlement of all my debts, and expenses of land settlement, to be put at interest, and the interest to be applied annually to the use of my wife and my son Ezra Drummond, until he becomes of age.

"4th. At the time my son Ezra attains the age of twenty-one years, or at the time of his death, I desire my hill farm, on which William Crow now lives, to be sold by my executor at private or public sale, as my executor may *desire* best, and on such terms as to credit, as he may appoint; and should my wife be

living and remain a widow, I desire the purchase money to be put at interest during her life, and I desire the proceeds of the sale of the personal property to be divided as follows: $200.00 to my son Elias, and $200.00 to my son Daniel. I have already gave my son George his portion in land. I have also gave my son John his portion in land ; $100.00 to my son David, I cut him short $100.00 on account of abusive language to *and* me. I give my daughter Elizabeth's heirs $100.00. I give to my daughter Hannah's heirs $200.00. I give to Joseph's heirs $100.00. I have already gave my daughter Nancy Jane her portion in land. I give to my daughter Hetty $200.00. I give to my daughter Liddy $150.00, and I give $50.00 to my son Pardon. I give to my daughter Susan $200.00. I give to my son, Ezra Drummond, $200.00, and whatever the balance may be shall be divided amongst the heirs in proportion to what has been already named.

"I have executors in view, but if they should either of them should not live, I desire that my wife, Martha, shall have the privilege of choosing another. I appoint David Roberts and John Doran and my wife, executors of this my *las* will and testament.

"Witness my hand — seal, April 9, 1861.

"JOSEPH MAGERS, SR., [Seal.]"

George Edwards qualified as the administrator, with the will annexed, of Joseph Magers. After his son, Ezra Drummond, named in the first clause of his will, attained the age of twenty-one, and at some time prior to May 18, 1874, George Edwards, the administrator with the will annexed, pursuant to the authority conferred on him by the fourth clause of the will, sold the hill farm to Thomas J. Dorsey for $7,679.79, with interest from the day of sale, payable one-fourth in cash, and the balance in one, two and three years.

On April 1, 1875, Martha Magers, the widow of the testator Joseph Magers, filed her bill in the circuit court of Marshall county, to obtain a decision of the

court of her rights under the fourth clause of the will, she claiming, that by it she was entitled to the interest for her life on the entire purchase money, for which the hill farm was sold, also to have set aside an agreement, signed by her on May 18, 1874, whereby she agreed to receive for her life one-third of said interest, and to permit George Edwards, the administrator with the will annexed, to pay out at once to the other legatees two-thirds of the principal, for which said hill farm was sold, and to enjoin him from paying out any more of such principal to them, a portion of it having been paid out, pursuant to this agreement.

The bill states the above facts in an indefinite manner, dates and amounts being generally left blank. They have been stated above as definitely, as shown by other portions of the record.

The bill further alleges, that she was an old woman of weak mind; that certain of the defendants represented to her, that there were defects in this will, and that she was not entitled to the interest on the proceeds of the hill farm; that a lawyer, at the instance of the said administrator, George Edwards, and perhaps also at the instance of others, legatees under this will, wrote this agreement; she was told by this lawyer, she had better sign this agreement to save her trouble, and that by it she got all, she was entitled to; that she could not read, and knew nothing of the contents of this agreement, except as so told to her; she took this agreement home with her, and having spent a sleepless night, the next morning one of the legatees under the will came to her house, and in a loud and boisterous manner commenced abusing her, which greatly added to her excitement; and under these circumstances she signed this agreement; and she charges, that the defendants confederated together to cheat and defraud her out of the interest of said purchase, to which she was entitled under the will.

To this bill the defendants were George Edwards,

1878
August Term.

Magers
v.
Edwards's
adm'r et al.

administrator of Joseph Magers, four of the sons and three of the daughters of the testator, and also the heirs of his son Joseph, and the heirs of his daughters Elizabeth and Hannah, they being the legatees, named in the fourth clause of said will. But his two sons, George and John, and his daughter, Nancy, were not made defendants to the bill, they being his children, to whom the will states he had given their portion in land.

The bill fails to state, what was the value of the land, so given to them as their portion; or the value of his estate real or personal; and whether the testator was indebted at the time of his death, or when he made his will.

The names of the testator's daughters, as stated in the bill, indicate, that they had all been married; but it fails otherwise to state this, and does not give the names of their husbands severally, or state, whether they were living or dead, and if any of them were dead, who were their personal representatives; nor does it make any of the husbands, or the personal representatives parties.

The injunction, prayed by the bill, prohibiting the payment by George Edwards, the administrator with the will annexed of Joseph Magers, of any more of the purchase money of said hill farm to the legatees of the testator till the further order of the court, was granted.

The agreement, sought to be set aside, was not signed by the legatees under the will, though this fact is not alleged in the bill. George Edwards, administrator with the will annexed of Joseph Magers, and David Magers, one of his sons and legatees, answered the bill; and also Thomas J. Dorsey, who was, I presume, one of the heirs of Elizabeth, a daughter of Joseph Magers the testator, though his relationship to the testator is neither stated in the bill nor in the answer.

It is, in the view taken by the court of the case, unnecessary to state the contents of these answers. They denied generally the allegations, made in the bill, of the circumstances, under which the agreement assailed was executed.

A general replication was filed to these answers; and the depositions of Martha Magers, the plaintiff, and of her youngest son, Ezra Magers, were taken. They testify only to the circumstances, under which the plaintiff signed this agreement. It is deemed unnecessary to state the substance of their evidence. It tended to show, that after Martha Magers had signed this agreement, she gave notice of her wish to retract her consent to this agreement, but whether before or after it had been signed by all the legatees, who did sign it, does not appear: the evidence not showing, when she signed this agreement; and on this point the bill and answers are silent.

On the 11th day of December, 1876, the court rendered the following decree :

" And now at this day, to-wit: At a special term of a circuit court, holden in and for the county of Marshall, at the court house of said county, on the 11th day of Dec., 1876, the day and year first herein named aforesaid, this cause came on to be heard upon the bill, answers of Geo. Edwards, administrator, David Magers and Thomas J. Dorsey, with general replications thereto, and the depositions of Martha Magers and Ezra Magers, and was argued by counsel. The court is of opinion and doth direct, that the will of Joseph Magers, deceased, should be held and construed to give to Martha Magers, the complainant, for her life the interest arising from the proceeds of sale of the hill farm, mentioned in the fourth clause thereof. And the court, proceeding to pass upon the other matters, referred to in the bill, answers and depositions, doth adjudge, order and decree, that the paper writing, purporting to be an agreement between the complainant and the heirs and other devisees, dated the the 18th day of May, 1874, and made an exhibit in the cause, be and the same is set aside and held for naught. And it is further adjudged, ordered and decreed, that this cause be referred to one of the commissioners of this court, to ascertain and report, what sum or sums of

1878
August Term.

Magers
v.
Edwards's
adm'r *et al.*

money have been paid by the said administrator to the distributees or legatees of said Joseph Magers under said agreement, or otherwise, and the dates of such payments; when the said real estate was sold; for how much; and the terms of sale; whether notice was given to said administrator by the complainant of her intention to not abide by the said agreement, and the date of said notice, if any; and whether any such payments were made with the assent or at the request of complainant, together with any other matter, deemed pertinent by him, or required by any party.

From the decree an appeal to this Court has been granted to Daniel Magers, Thomas Dorsey and Wm. H. Dorsey.

*J. Dallas Ewing*, for appellants, relied on the following authorities:

25 Gratt. 28; Story Eq. Jur. §§ 232, 244, 245 and 246; 1 Redf. on Wills (4th ed.) 461, n. 14; *Id.* 454; *Id.* 433; *Id.* 455, n. 1; *Id.* 460, n. 13; 5 Munf. 114; 4 Rand. 222; 2 W. Va. 62; 2 Call 72.

*R. C. Holliday & Son*, for appellee, cited the following authorities:

12 Gratt. 196; 1 Munf. 537; 4 Rand. 213; 4 H. & M. 283; 25 Gratt. 39; 3 Cush. 224; 1 Pars. on Cont. 399 and notes; *Id.* 400, 401; Chitt. on Con. 1, 9, 10 and notes; 25 Gratt, 43; *Id.* 39, 69; 1 Story Eq. Jur. §§ 222, 239 and notes.

GREEN, PRESIDENT, delivered the opinion of the Court:

The first question presented by the record in this cause is, whether in the imperfect condition of the bill the circuit court ought to have rendered any decree on the merits in this cause. The principal objects of the suit are: first, to obtain the opinion of the court on the question, whether Martha Magers, the widow of the

testator Joseph Magers, under the will of her husband was entitled to the interest during her life on the purchase money of the hill farm in the hands of the administrator; and secondly, to set aside the agreement of May 18, 1874, which had been executed by her.

The propriety of setting aside this agreement depends to some extent on the question, whether the plaintiff Martha Magers under her husband's will is entitled during her life to the interest of the proceeds of the hill farm. And the point to be determined is : ought the court in this case on this bill to have determined the question, whether the plaintiff was under the will of her husband entitled to the interest on the proceeds of this hill farm during her life, or widowhood; or ought it to have refused to decide this question, till other parties were brought before the court, and till the situation of the testator and his family and property and other facts and circumstances, as surrounding the testator at the time of the making of the will, had been established by the evidence, or enquired into by a commissioner, with a view of elucidating the testator's general intention and the scheme, which he had framed for the disposition of his property.

However great may be the task of ascertaining the intention of the testator, still if it can be ascertained by any legitimate means, it must be held sacred and full effect given to it. The court will make the amplest allowance for unskillfulness and negligence of the testator; technical informalities will be disregarded ; the most preplexing complications of words and sentences will be carefully unfolded ; and traces of the testator's intention will be diligently sought out in every part of the instrument ; and the whole carefully weighed together. And in construing a will the court ought, when the cases require it, to enquire into all the circumstances surrounding the testator, when he made his will, and which may have influenced him.

But if after exploring throughout the entire will, aided

Syllabus 1.

Syllabus 2

by all the facts known to the testator, and all the circumstances surrounding him, when he made his will, the court cannot penetrate through the obscurity, in which the testator has involved his intention, the failure of a supposed intended testamentary disposition is the inevitable consequence; and the heirs or distributees must in such case take ; for they cannot be disinherited but by necessary implication. See opinion of Judge Lee in *Wootton* v. *Redd's ex'rs et al.*, 12 Gratt. 205, 206.

In the case before us the will of Joseph Magers, Sr., is quite obscure ; and it is obvious, that we cannot interpret fairly the first portion of the fourth clause of this will, which the bill seeks, without carefully considering not only the whole of this fourth clause but also the entire will. This first portion of this fourth clause, the direct subject of controversy in this suits, is : "At the time my son Ezra attains the age of twenty-one, or at the time of his death, I desire my hill farm to be sold by my executor ; and should my wife be living, and remain a widow, I desire the purchase money to be put at interest during her life ;" but the testator immediately adds : "And I desire the proceeds of the sale of the personal property to be divided as follows : " He then proceeds to bequeath $1,650.00, in sums ranging from $100.00 to $200.00, among his children and the descendants of his deceased children, including, I supsuppose, all of them except those, to whom, he says, "he has already given their portion in land."

It is obvious, that in determining the question, whether he intended his wife to have during her life, or widowhood, the interest on the proceeds of the sale of this land, it will greatly aid us, if we can determine definitely the meaning of the testator in the latter part of this fourth clause of his will. Did he mean thereby to dispose only of the proceeds of what was technically his personal property ; or did he mean thereby to dispose of the proceeds of this hill farm ; or of both his personal property and the hill farm. If he meant the proceeds of the sale of

1878
August Term.

Magers
v.
Edwards's
adm'r et al.

Syllabus 3.

his personal property proper, then he died intestate as to the proceeds of his hill farm, or at least as to the principal thereof. And in that case all his children, including the descendants of those, who had died, would take the proceeds of the hill farm as distributees; and a portion of it would be coming to his children, George, John and Nancy Jane, to whom he gives nothing, and who are not made parties defendants to this suit. If then it is important, in order to determine the principal question in this case, to first determine, whether the testator died intestate, as to any portion of his estate real or personal, it is obviously proper, nay absolutely necessary, before this case can be properly decided, or considered by the court, that all the children of the testator should be parties to the suit.

The bill also states that some of the legacies, named in this fourth clause of the will, have been paid by the administrator improperly to the legatees. Now if these payments have been made to the female legatees, their husbands should also be made parties, for it might turn out, that a portion of such payments might have to be refunded. And if it should be held, that the testator died intestate, as to the extent of the proceeds of the sale of the hill farm during his widows' life, then the husbands would be entitled to receive their share thereof in right of their wives, as distributees. They should therefore have been made parties, before the court decided this cause on its merits. And if they, or any of them, have died, their personal representatives should have been made parties.

Even had the proper parties all been before the court, it could not, in view of the difficulties of construing this will, have prudently decided this cause on its merits, till, on the principles we have already stated, it had before it the state of facts, under which the will was made, including the amount and value of the real and personal estate, when the will was made, and when the testator died; whether his personal estate, after deduct-

ing the portion given to his wife spcifically by the second clause of the will, was more than sufficient to pay his debts, and if so, how much more; and especially, what land the testator had given to his children, George, John and Nancy Jane, before making his will; and the value of the land so given.

These facts would certainly aid the court in coming to a correct conclusion, as to the meaning of the testator in the fourth clause of his will, and in determining, whether he died intestate, as to any portion of his estate real or personal.

The court therefore, instead of deciding on the merits of the case, should have given leave to the plaintiff to amend his bill, if he thought proper, and to make the necessary parties, and more distinct allegations in the bill, and also to make all allegations, he thought proper, of facts existing at the time the testator made his will, which would aid in its interpretation; and when this has been done, if the testimony, which may be taken or the pleadings hereafter, do not ascertain these facts to the satisfaction of the court, it should direct an enquiry of them to be made by a commissioner of the court before deciding the cause on its merits.

I am therefore of opinion, that the decree, rendered in this cause, of December 11, 1876, should be set aside, reversed and annulled, as prematurely made; and that the appellants must recover of the appellee, Martha Magers, their costs in this Court expended; and this Court proceeding to render such decree, as the court below ought to have done, doth grant leave to the plaintiff to amend her bill, and make the necessary parties thereto, and such other allegations, as she is advised may be desirable; and this cause is remanded to the circuit court of Marshall county, to be further proceeded with according to the principles indicated in this opinion, and further according to the rules of a court of equity.

THE OTHER JUDGES CONCURRED.

DECREE REVERSED.    CAUSE REMANDED.