# WHEELING.

## EWING v. WINTERS.

Submitted June 6, 1890.—Decided June 21, 1890.

WILLS—CONSTRUCTION—ESTATE.

A testator making his will devises as follows: "*First*. After all my lawful debts are paid and discharged, the residue of my estate real and personal I give, bequeath and dispose of as follows, to-wit: To my beloved wife, the sum of one thousand

($1,000.00) dollars, one horse, saddle and bridle, and to be supported on the place so long as she lives.   *   *   *   To my———Thomas Jefferson I bequeath forty acres of land situated on Wharton's run, joining the old Dennison place, together with one thousand ($1,000.00) dollars. To my son, William Harvey, I bequeath the 'old homestead,' together with all my personal property. To John Beal, I bequeath one horse, saddle and bridle together with fifty ($50.00) dollars when he arrives at twenty one years of age. Furthermore, I will that, after the death of my wife William Harvey is to pay to each of his brothers two hundred ($200.00) dollars, beginning at the eldest, and pay two hundred dollars a year until each receives his portion. Furthermore, I will that, in case of the death of either Thomas J. or William H., the property by me willed is to belong to their widows as long as they remain such, and, in case that they marry, the said property is to go to the children of the aforesaid Thomas J. and William H." *Held*, (1) upon looking at the whole will, both the original words of devise and the qualifying words and provisions in the subsequent parts of the instrument, and at all the facts disclosed by the record, and all the surrounding circumstances which may reasonably be supposed to have influenced the testator at the time of making his will, that he did not have in contemplation the death of William Harvey before his own demise as a contingency to be provided against, but that by the words "in case of" he meant "at" or "upon" the death of William Harvey Winters; (2) that there is no inflexible rule of interpretation of the words used by the testator which can prevent such a construction as will carry out his intention to give to William Harvey the homestead for life, with an estate over to his wife, should she survive him, during widowhood, and a remainder over in fee to his children, to vest in possession at the marriage or death of his widow, should his wife survive him, otherwise at his own death.

*H. M. Russell* for appellant, cited :

2 Jarm. Wills 414 (* 803); *Id.* 420–424 (* 806–810); 2 Min. Inst. 263; 6 Pet. 68; 104 U. S. 296; 21 W. Va. 502; 23 W. Va. 36; 3 Jarm. Wills 616 (* 760); 12 W. Va. 432; 1 Jarm. Wills 622 (* 340); Code, c. 71 § 18; 12 W. Va. 427; 3 Jarm. Wills 611 (* 756); 13 Vroom 297; 21 N. J. Eq. 14; Code c. 77 §§ 10, 12.

*W. W. Arnett* of counsel for appellants, cited 13 W. Va. 510.

*Caldwell & Caldwell* for appellees, cited :

18 W. Va. 244; 15 W. Va. 646; 2 Redf. Wills (4th Ed.) 235 s. p.; 1 Redf. Wills (4th Ed.) 445, 446 s. p.; 2 Strange

1261; 4 Ves. 160; 2 Redf. Wills (4th Ed.) 260 s. p.; 109 U. S. 725.

LUCAS JUDGE:

James Rine, a judgment-creditor of William Harvey Winters, filed his bill in the Circuit Court of Marshall county to subject the real estate of the debtor to payment of his judgments. I. N. Ewing, another judgment-creditor, subsequently filed a general creditors' bill for the same purpose; and the causes were consolidated and heard together. The controversy arises upon the construction of the will of James Winters, who devised to the defendant, William H. Winters, a farm known as the "Old Homestead," by his will, which was in the following language:

"I, James Winters, of Sand Hill township, Marshall county, and State of West Virginia, being of sound mind and memory, do make, ordain, and publish and declare this to be my last will and testament; that is to say: *First.* After all my lawful debts are paid and discharged, the residue of my estate, real and personal, I give, bequeath, and dispose of as follows, to-wit: To my beloved wife, the sum of one thousand ($1,000.00) dollars, one horse, saddle and bridle, and to be supported on the place so long as she lives. To my son John Wesley, I bequeath the farm he now occupies, and he is to pay to my son Daniel one thousand ($1,000.00) dollars in three years from date. To my son Daniel, I bequeath the farm he is now living on. To my son James Franklin, I bequeath the farm he is now living on, together with five hundred ($500.00) dollars. To my ——Thomas Jefferson, I bequeath forty acres of land situated on Wharton's run, joining the old Dennison place, together with one thousand ($1,000.00) dollars. To my son William Harvey, I bequeath the 'Old Homestead,' together with all my personal property. To John Beal, I bequeath one horse, saddle and bridle, together with fifty ($50.00) dollars when he arrives at twenty one years of age. Furthermore, I will that, after the death of my wife, William Harvey is to pay to each of his brothers two hundred ($200.00) dollars, beginning at the eldest, and pay two hundred dollars a year until each receives his portion. Furthermore,

I will that, in case of the death of either Thomas J. or William H., the property by me willed is to belong to their widows as long as they remain such, and, in case that they marry, the said property is to go to the children of the aforesaid Thomas J. and William H. Likewise I make, constitute, and appoint my sons John Wesley and Daniel, together with my nephew Isaac Winters, to be executors of this, my last will and testament, thereby revoking all former wills by me made. In witness whereof, I have hereunto subscribed my name and affixed my seal the 20th day of May, in the year of our Lord one thousand eight hundred and seventy two.

his
" JAMES X WINTERS."
mark.

This will was probated June 28, 1872, being one month and ten days after its execution. The question which arose before the lower court was, whether under this will William H. Winters took at the death of his father, the testator, a fee-simple interest in the old homestead, or only a life-estate with a limitation over eventually to his children. The court below held to the former view and directed through its commissioners an out and out sale of the land, which was sold on the 16th day of June, 1888, for four thousand three hundred dollars, a price insufficient to pay said judgment-liens. Before the sale, however, the infant defendants, the children of William H. Winters, made a motion to reverse or correct a decree, which had settled the principles of the cause and defined and subjected the interest of William H. Winters. This motion, which though somewhat anomalous may be treated as a petition to rehear, the court overruled. The sale was made and confirmed, and a writ of possession awarded the purchaser. Appeal has been taken from, and *supersedeas* allowed to, three decrees of the Circuit Court—one, the 5th of April 1888, deciding that William H. Winters owned the absolute fee in the old homestead, and that the infant defendants had no title to or interest in the same, and directing an out and out sale; the second, rendered June 23, 1888, overruling the motion to correct or reverse the said decree of April 5,

1885; and the third, rendered on December 31, 1888, confirming the sale, distributing the cash-payment, and directing a deed and writ of possession.    This last decree was to be suspended, for the purpose of applying for an appeal, for a period of forty five days, upon bond being given, in the penalty of three hundred dollars, conditioned according to law.    There is nothing in the record to show that the suspending bond was ever executed, and the forty five days had expired long before the *supersedeas* was granted.    It appears by the record and evidence that the wife of William H. Winters has died since the will took effect, and that their children surviving her are the four infant defendants, in whose behalf this appeal is being prosecuted; also that the widow of the testator is dead.

The *first* inquiry in this case is to ascertain what was the intention of the testator; and, *secondly,* we are to inquire whether that intention can be effectuated without violating or infringing upon any well-settled and inexorable rule of construction heretofore recognized and established.    Did the testator intend by his will to give to William H. Winters the absolute fee-simple in the homestead or only a life-estate?    In ascertaining the true answer to this question we must look at the whole will—both the original words of gift and the qualifying words and provisions in the subsequent parts of the instrument.    *Magers* v. *Edwards's Adm'r,* 13 W. Va. 822.    We are also at liberty to look at any facts in the record, known to the testator, which may reasonably be supposed to have influenced him in the disposition of his property; also at all the surrounding circumstances at the time of making the will, which appear of record.    *John* v. *Barnes,* 21 W. Va. 502; *Magers* v. *Edwards's Adm'r,* 13 W. Va. 822.

In this case the words of devise first used are: "To my son William Harvey I bequeath the 'Old Homestead,' together with all my personal property."    The devise here being without any words of limitation would under our statute carry the fee-simple, "unless a contrary intention shall appear by the will."    I am of opinion, such contrary intention does appear by the subsequent provisions of the will; for almost immediately following this general devise

the testator proceeds : "Furthermore I will that after the death of my wife William Harvey is to pay to each of his brothers two hundred dollars ($200.00), beginning at the eldest, and pay two hundred dollars a year until each receives his portion. Furthermore I will that in case of the death of either Thomas J. or William H. the property by me willed is to belong to their widows as long as they remain such, and, in case that they marry, the said property is to go to the children of the aforesaid Thomas J. and William H."

The words "in case of the death" are the words which create (as they always do, to a greater or less extent) uncertainty as to what the testator meant. Standing alone as a qualification upon a bequest made in absolute terms they are generally construed to mean, in case of the death of the donee before that of the testator, and are construed to have been inserted to prevent the lapsing of a legacy. But in the present case the testator, having already provided that his own widow should be supported on the place, (presumably the homestead,) so long as she lives, then devises it to William Harvey with a charge that after the death of testator's widow said William Harvey should pay two hundred dollars a year to each of his brothers, beginning at the eldest. Here, then, is a charge or trust imposed upon William to be discharged after the testator's death to testator's widow. Moreover, the testator only lived, as appears by the record, about six weeks after making his will; and only one week before his death all of his children, doubtless at his request and in contemplation of his early demise, signed an agreement to abide by the terms of his will. I am satisfied, therefore, from the general tenor of the whole will and the circumstances surrounding the testator, that he did not have in contemplation the death of William H. before his own as a contingency to be provided for; and that, by the words "in case of," he meant "at" or "upon" the death of William Harvey Winters.

Having come to this conclusion as to the intention of the testator, it remains to inquire whether that intention can be effectuated without the violation of any well-settled and inexorable rule of construction of the words "in case

of the death," which this Court would feel bound to respect and carry out, notwithstanding such a construction might defeat the intention of the testator. I am of opinion that there is no such inflexible rule of construction of the words named. The text-writers, it is true, have laid the rule down in regard to personal property in unqualified terms—stronger in fact than the authorities they cite will justify. Thus, Mr. Redfield: "A bequest to A. and in case of his death to B. is construed as a provision to save the lapsing of the legacy, and to mean in case of his death during my lifetime; so that, if both survive the testator, A. takes the bequest absolutely." 2 Redf. Wills, 260. To same effect, Jarman: "Hence it has become an established rule, that, where the bequest is simply to A., and in case of his death, or if he die, to B., A. surviving the testator takes absolutely." 2 Jarm. Wills, 752. So Theob. Wills, 336.

The cases—nearly all of them—upon which these *dicta* rest, came under review of the High Court of Chancery in 1802, in the leading case of *Cambridge* v. *Rous*, 8 Ves. 12. The language to be construed was as follows: " I give, devise, and bequeath to my eldest sister, Martha Kuyck Van Mierop, the sum of four thousand pounds sterling, lawful money of Great Britain, and in case of her death to devolve upon her sister Cornelia Mierop." Sir WILLIAM GRANT, M. R., said: "As to the first question in this cause, whether Martha Kuyck Van Mierop was entitled absolutely to the legacy of four thousand pounds, or for life only, the words, in which the bequest over is expressed, have not in themselves, nor have they by construction received, a precise and definite meaning, in which they must be uniformly understood. The expression itself is incorrect, as it applies words of contingency to an event which is certain. No man can with propriety speak of death as a contingent event, which may or may not happen. When, therefore, a testator so expresses himself, the question is what he means by that inaccurate expression. He may, perhaps, have had some contingency in his mind, as that the legatee was dead at the time he was making the will, or might be dead before his own death,

or before the legacy should be payable; and then the inaccuracy consists in not specifying the period to which the death was to be referred. He might have meant to speak generally of the death, whenever it might happen, and then the contingent or conditional words must be rejected, and words of absolute signification must be introduced; and, accordingly, in every instance, in which these words have been used, the courts have endeavored to collect from the nature and circumstances of the bequest or the context of the will, in which of these two senses it is most likely this doubtful and ambiguous expression was employed."

After using this language the learned master of the rolls proceeds to discuss all the antecedent cases, including both *Hinckley* v. *Simmons*, 4 Ves. 160, and *Lowfield* v. *Stoneham*, 2 Strange, 1261, cited in this case by the counsel for appellee, and concludes as the result of them all that "the construction is to depend upon the intention." 8 Ves. pp. 21, 22.

This, I think, is the conclusion of the best authorities, and is all that can be said upon the subject. There are many modern cases in which the principle laid down in *Cambridge* v. *Rous* has been followed. In *Naundorf* v. *Schumann*, 41 N. J. Eq. 14, (2 Atl. Rep. 609) the language was: "A testator gave all his property for the sole use and benefit of his wife, and, in the event of her death, then what shall remain to be disposed of in the manner following;" and it was held she took only a life-estate, and that the words "in the event of" meant "upon her death."

It is certain, moreover, that the will under consideration would at common-law have been construed as vesting only a life-estate in William Harvey. The devise being without words of inheritance, the expression, "in case of the death of the devisee, then over to his children," would not be construed as vesting an estate in the children only in the event of the first devisee dying in the life-time of the testator.

Mr. Jarman thus lays down the rule: "Consistently with the principle of the two cases (*Smart* v. *Clark*, 3 Russ. 365; *Tilson* v. *Jones*, 1 Russ. & M. 553) just stated, it has been held that the words under consideration, ('in case of his death,') succeeding an indefinite devise of land, would

(as such a devise, if contained in a will which is subject to the old law, confers only an estate for life) be held to be synonymous with 'after the death,' and accordingly the estate to which they are prefixed is a vested remainder expectant on such life-estate. Thus, in *Bowen* v. *Scowcroft*, 2 You. & Coll. 640, where an undivided share in lands was devised to W. and B., and in case of their demise the testator devised their respective shares to be equally divided among their children or their lawful heirs, ALDERSON, B., was of opinion that, as this was a case of a devise of land, the authorities relating to personal estate did not apply, and that the words were to be construed 'after their decease.' " 2 Jarm. Wills, 760.

If this will were to be construed by the rules of the common-law, therefore, William H. Winters would take a life-estate only. It is true that by our statute (Code, c. 71, § 8) a devise without any words of limitation shall be construed to pass the fee-simple, "unless a contrary intention shall appear by the will." In this case, we think, such contrary intention does manifestly appear; and therefore under the statute the construction will be governed by the intention and will be the same as at common-law.

I conclude, therefore, that there is no inflexible rule of interpretation of the words used by the testator, which can be interposed to prevent such a construction, as will carry out what appears to have been his intention to give to W. H. Winters the homestead for life, an estate to his wife, should she survive him, during widowhood, and a remainder over in fee to his children, to vest in possession at the marriage or death of his widow, should his wife survive him; otherwise, at his own death. This being my conclusion, I am of opinion that there was error in the decrees of the court which are complained of, viz., that of April 5, 1888, and that of June 23, 1888, and that these decrees must be reversed.

There are some other questions, which will arise, when the case goes back, and which we ought to dispose of. Chapter 132, § 8, of the Code provides: "If a sale of property be made under a decree or order of a court, and such sale be confirmed, though such decree or order be after-

wards reversed or set aside, the title of the purchaser at such sale shall not be affected thereby; but there may be restitution of the proceeds of sale to those entitled." These infant defendants were before the court, and represented by guardian *ad litem;* and there is no charge that the sale was not fair and free from fraud, and no exceptions have been taken to the report of sale. Therefore as to them the decree confirming the sale must stand, and steps must be taken to enforce restitution of the purchase-money, so far distributed, and investment for the benefit of these infants ultimately as to the principal; the interest during the life of William H. Winters to go to his creditors. It does not appear whether the brothers of W. H. Winters have been paid their respective legacies of two hundred dollars each, charged against him, nor whether the charge could affect the land in the hands of the purchaser or otherwise; nor can these questions be determined in this proceeding, as it now stands, because they were not made parties; nor is there any evidence of the relative value of the real and personal estate left by the testator, tending to show whether these legacies should be considered or not, as charged upon the land. It would be improper to express in advance any opinion upon these questions, and I only suggest them as proper for consideration in certain contingencies, when the case goes back.

The two decrees of April 5, 1888, and June 23, 1888, respectively, are reversed and annulled, and the final decree of December 31, 1888, is likewise reversed, except so much thereof as confirms the report of sale, and directs a deed and possession and costs of sale, with costs to the appellants against the appellees; and the cause is remanded to the Circuit Court for further proceedings to be had therein in accordance with the principles announced in this opinion, and further in accordance with the principles of equity.

Reversed.   Remanded.