# CHARLESTON.

## ATKINSON v. WINTERS *et al.*

## Submitted June 9, 1899—Decided December 2, 1899.

1. USE AND OCCUPATION—*Assumpsit—Pleading.*.
   Where an action of assumpsit is brought for the use and occupation of a tract of land, and the declaration contains only two counts, one of which is indebitatus assumpsit, and the other on the quantum meruit, and a bill of particulars is filed with the declaration, if the defendants interpose the plea of non assumpsit in five years, although a written agreement not under seal may appear in evidence, fixing the terms of the rental for one year, when the possession and occupancy continue for nearly six years thereafter, under our statute, the plaintiff shall not be nonsuited by reason of said writing appearing in evidence, but the same may be considered in fixing the value of the rental. (p. 231).

2. ASSUMPSIT—*Limitation—Plea.*
   In an action of assumpsit for the use and occupation of land, where the cause of action arises upon the breach of the

contract, and not at the time of making the same, a plea that the defendant did not assume, as in the declaration set forth, within five years prior to the commencement of this suit, is not a proper plea. It should be that the action did not accrue within five years, etc. (p. 233).

3. DEFENSE—*Limitation—Affirmative—Plea.*

    The defense of the statute of limitations is an affirmative one, and a plea of the statute which merely avers the pleader's conclusions of law is bad. The plea must, as a general rule, set up the facts constituting the bar,—as, for instance, that the alleged cause of action did not accrue within certain designated years previous to the institution of the suit. (p. 236).

Error to Circuit Court, Marshall County.

Action by Edward M. Atkinson against W. H. and J. F. Winters. Judgment for plaintiff, and defendants bring error.

                           *Affirmed.*

ROBERT WHITE, for plaintiffs in error.

CALDWELL & CALDWELL, for defendant in error.

ENGLISH, JUDGE:

On the 27th day of March, 1896, Edward M. Atkinson, instituted an action of trespass on the case, in *assumpsit*, against William H. Winters and James F. Winters, in the circuit court of Marshall County, to recover three thousand dollars for the use and occupation of a certain farm, with its appurtenances. The declaration contains two counts, —the first being the ordinary count for use and occupation; and the second, the usual *quantum meruit* count. The defendants filed three special pleas,—the first being that they did not assume and promise as in the declaration set forth within five years prior to the commencement of the suit; the second averring that, if they made the plaintiff the promise alleged in his declaration, at the time of making such promise the defendants were hopelessly drunk, and wholly incompetent to make any promise valid and binding in law; the third averring that they did not occupy and enjoy the premises mentioned by virtue of any contract, lease, or agreement with the plaintiff, but because they claimed title to said premises in themselves,

and denied all title of plaintiff to the same,—to all of which pleas the plaintiff replied generally, and issue was thereon joined. During the trial a paper purporting to be a lease from E. M. Atkinson to W. H. Winters and J. F. Winters, bearing date April 1, 1889, for a tract of land known as the "James Winters Farm," situated in Sand Hill district, Marshall County, West Virginia, containing about one hundred and eighty acres, for the term of one year, commencing the 1st of April, 1889, and ending March 31, 1890, in consideration of three hundred dollars, which was in the usual form, and signed by E. M. Atkinson, W. H. Winters, and James F. Winters, but not sealed, was offered in evidence, and objected to by defendants' counsel. The objection having been overruled, the lease was read in evidence to the jury, which lease, at its conclusion, contained the following stipulations: "It is mutually agreed that in case the Supreme Court of the State of West Virginia shall decide the case in which said party of the first part purchased said land in favor of said Winters or his children, or shall decide in said cause that Atkinson was not in possession of said farm at the time the supersedeas was allowed in said cause, then in either case this lease shall become void and of no effect; and it is further agreed that said second party waives no right of any kind in connection with said cause by making this lease." The plaintiff also asked the court to give the jury the following instruction: "No. 1. A tenant for years, who holds over after the expiration of his term without paying rent, or otherwise acknowledging a continuance of the tenancy, becomes either a trespasser or a tenant, at the option of the landlord. No. 2. Where the landlord suffers the tenant to remain in possession after the expiration of the original tenancy, the law presumes the holding to be upon the terms of the original tenancy. No. 3. The court instructs the jury that the paper marked 'No. 61,' at the time it was executed, was a lease with provisos; and at the time the cause of action accrued in the cause the court of appeals having decided the cause referred to in the paper marked 'No. 61,' as appears in evidence of said cause, the said paper became a valid lease, with the term thereof to date from April 1, 1889, the date of said lease. No. 4. A lease

for years is a contract for the possession and profits of land for a determinate period, with the recompense of rent. No. 5. A lessee entering into possession or retaining possession under a lease is estopped, while retaining possession, to deny his landlord's title. This arises from the nature of the contract of lease, which is for the possession and use for a prescribed period of the lessor's property under considerations to him by way of rent or otherwise.'' But the court refused to give No. 3 as presented by the plaintiff, but gave in lieu thereof the following, to wit: "The court instructs the jury that the paper marked 'No. 61,' at the time it was executed, was a lease with provisos. At the time the cause of action accrued in this cause the Court of Appeals having decided the cause referred to in this paper marked 'No. 61,' as appears by the record in evidence of said cause, the said paper became a valid lease, with the terms thereof to date from April 1, 1889, the date of said lease.'' And the defendants asked the court to give certain instructions to the jury, numbered one, two, three, four, five, six, to wit: "Instructions: No. 1. The court instructs the jury that if they believe from the evidence that the Supreme Court of Appeals of West Virginia did decide the case referred to in the contract of April 1, 1889, in evidence, in favor of the children of the defendant W. H. Winters, then they must find that the said contract is nugatory and is not binding upon the defendants. No. 2. If the jury believe from the evidence that the question of the possession of the plaintiff, Atkinson, named in said contract of April 1, 1889, has not been decided in the cause therein referred to, then the jury must find that said contract cannot now be enforced in the suit against said defendants. No. 3. The court instructs the jury that, if they believe from the evidence that it was the intention and understanding and agreement between the parties at the time of entering into the contract that said contract was not to have the full effect of a simple lease of real estate, then the jury cannot and should not give it the effect of a lease between the parties. No. 4. If the jury believe from the evidence that it was the intention and agreement and understanding of the parties to said agreement of April 1, 1889, that the question of the possession or right to the

possession of the real estate therein named was not to be
thereby settled or fixed, but was reserved and remained·
open, then said contract cannot be treated by the jury as
settling the rights of the parties as to the possession of
said property.  No. 5.  The court instructs the jury that
the plaintiff in this case is required to prove his case by a
preponderance of the evidence.   No. 6.  The court further
instructs the jury that unless they believe from the evi-
dence  that the plaintiff has proved by a preponderance of
the evidence that it was the intention of the parties to the
contract offered in evidence, and dated April 1, 1889, at the
time of the execution, that it was to operate and have the
force and effect of a lease between the parties thereto,
then the jury are instructed that they shall not treat said
contract as a lease, but shall treat and consider it accord-
ing to the intention of the parties at the time of the execu-
tion of said contract, as shown by the evidence introduced."
These instructions were refused by the court, but in lieu
thereof the court gave an instruction marked "1," which
does not appear in the record, and the clerk certifies that
it cannot be found after diligent search.   This instruction,
however, by agreement filed, appears to have been subse-
quently found, and reads as follows: "The court instructs
the jury that the plaintiff, in order to recover in this case
against the defendants, is required to prove his case by a
preponderance of all the evidence,"—which instruction
was given in lieu of the instruction asked by defendants.
The record in the chancery suits of I. N. Ewing against
W. H. Winters et al. and James Rine against W. H. Win-
ters, from the circuit court of Marshall county, were read
in evidence to the jury; also, the opinion and mandate of
this Court in the case of *Ewing* v. *Winters*, 11 S. E. 718.
Numerous witnesses were examined, and the case sub-
mitted to a jury, who found for the plaintiff for the sum
of two thousand one hundred and thirty-three dollars and
ninety cents.  The defendants moved in arrest of judg-
ment, and asked the court to set aside the verdict of the
jury and grant them a new trial, which motion was over-
ruled by the court, the defendants excepted, and judg-
ment was rendered upon the verdict, and thereupon the
defendants obtained this writ of error.

Now, in considering the questions presented by the record in this case, it may be well to look first at the pleadings. The declaration contains but two counts. The first, as we have seen, is indebitatus assumpsit, and the second on the quantum meruit; no mention being made of a written lease. Besides the plea of the statute of limitations, non assumpsit in five years is pleaded and relied on; and to this plea there is no special reply, the plaintiff relying on the general replication. The suit therefore in no manner appears to have been predicated upon any lease in writing. Our statute (section 7, chapter 93, Code) provides that: "Rent of every kind may be recovered by distress or action. A landlord may also, by action, recover (where the agreement is not by deed) a reasonable satisfaction for the use and occupation of lands; on the trial of which action, if any parol demise, or any agreement (not being by deed) wherein a certain rent was reserved, shall appear in evidence, the plaintiff shall not therefore be non-suited; but may use the same as evidence of the amount of his debt or damages." Under this section of the statute, this action might have been brought upon said written contract. The plaintiff has, however, seen proper to take a different course, and the contract was offered in evidence. The statute says that when thus offered it may be used as evidence of the amount of the plaintiff's claim, and that it may be so used was held in the case of *Goshorn* v. *Stewart*, 15 W. Va. 657. Let us next inquire whether said written contract could be used for any other purpose than that designated in the statute. It is neither declared on nor relied on by way of reply to the statute of limitations, there being no intimation in the pleadings that the plaintiff's claim was based upon a written agreement. When it appears in evidence, it does not have the effect of nonsuiting the plaintiff, as it did before the statute, but may be used as evidence of the amount of debt or damages. When we look to the terms of this contract, it appears that it was for one year, commencing April 1, 1889, and ending March 31, 1890; and while, subsequent to the last-named date, there was no written agreement as to the rental to be paid, yet the law would presume that the tenant kept the property at the same rate, in the absence of any subse-

quent contract. This written agreement seems to have been limited expressly to one year. It also contained a stipulation that if this Court should decide the case in which E. M. Atkinson purchased said land in favor of said Winters or his children, or should decide that Atkinson was not in possession of said farm at the time the supersedeas was allowed, then in either case said lease should become void and of no effect, and that said parties of the second part waived no rights of any kind in connection with said cause by making said lease. The case referred to as pending in this Court was not decided during the continuance of said written lease, but the opinion in the case was handed down on June 21, 1890, nearly three months after the termination of said lease, reversing the court below, and holding that a proper construction of the will of James Winters was that he gave to W. H. Winters the homestead for life, an estate to his wife, should she survive him, during widowhood, and the remainder over in fee to his children, to vest in possession at the marriage or death of his widow, should his wife survive him, otherwise at his own death; but allowing Atkinson to hold the property under his purchase at the judicial sale which had been confirmed under section 8 of chapter 132 of the Code. This Court did then decide said cause in favor of Winters and his children, but did not decide that Atkinson was not in possession of said farm at the time the *supersedeas* was allowed; but neither of said contingencies occurred during the continuance of said lease, and for that reason it was not affected thereby. The defendants and appellants remained in possession of the land after the termination of the lease, until the institution of this suit, which, as we have seen, was not brought upon said written contract, but was brought for the use and occupation of the land; and the writing was, we think, properly admitted in evidence in order to fix the amount of rent. Taylor, in his valuable work on Landlord and Tenant (volume 2, § 635), in speaking of the action for use and occupation, says: "At common law an action of assumpsit for use and occupation could not be maintained if there was an express demise. Debt for use and occupation would always lie, but the plaintiff in assumpsit was liable to nonsuit if an express demise was proved. This

restriction was removed by St. 11 Geo. II. chap. 19, where the demise was not by deed, and recovery in an action of case (that is, assumpsit) was allowed, notwithstanding an express demise not under seal was proved. In this action the landlord recovers, not rent, but the equivalent of rent (that is to say, a reasonable satisfaction for the use and occupation of the premises which have been held and enjoyed under the demise); and the rent fixed by the agreement is only used as a medium by which the damages in this form of action shall be ascertained and liquidated."

As we have seen, the English statute above quoted has, in substance, been adopted in our statute, which expressly allows the written agreement as evidence as to the amount of the debt or damages, and to be used in fixing the amount of the rent per annum. Then, as to the statute of limitations: When we refer to section 6 of chapter 104 of the Code, we find that the ten-years limitation applies to "every action to recover money which is founded  *  *  * upon a contract by writing signed by the party to be charged thereby or his agent, but not under seal, and if it be upon other contract within five years unless," etc. Now, as this suit was not founded upon said written contract, I hold that the limitation of five years is not affected by said written contract, but applies to the entire account sued on, and set forth in the bill of particulars filed with the plaintiff's declaration, without reference to said written contract. Commencing with the one hundred and fifty dollars due September 30, 1891, and including interest to the date of the verdict, the rent for the five years next preceding the institution of this suit would be one thousand seven hundred and forty-eight dollars and forty-three cents, which is three hundred and eighty-five dollars and forty-seven cents less than the verdict found by the jury. So that in my view of the case the verdict was excessive, and should have been set aside.

As to the instructions asked for by the plaintiff, Nos. one, two, four and five were abstract propositions of law, with reference to the lease offered in evidence. Instruction No. 3, as asked for by the plaintiff, and as modified and given by the court, in either form was improper, because, as was held by this Court in *Barber* v. *Insurance*

*Co* , 16 W. Va. 658, "it is error to instruct a jury as to a clause of a contract not presented to the court by the pleadings." Nos. four and five were well calculated to mislead the jury. While it is true, as an abstract proposition, as stated in No. five, that "a lessee entering into possession under a lease is estopped, while retaining possession, to deny his landlord's title, which arises from the nature of the contract of lease, which is for the possession and use for a prescribed period of the lessors' property under considerations to him by way of rent or otherwise," yet this law applies to an ordinary lease without such a stipulation as is contained in this lease, referring to the pendency of said appeal in this court, and providing that no right of any kind in connection with said cause should be waived by making said lease; clearly indicating that it was not the intention of the parties that by said lease W. H. Winters or James Winters should thereby concede that E. M. Atkinson was their landlord, or entitled to the possession of the land. Again, said written agreement was expressly limited in duration to one year, and even if the action had been predicated upon it, instead of being an action of assumpsit, for use and occupation, said instruction No. 5, as given by the court, was calculated to mislead the jury, and should not have been given to them, for the further reason that it tells the jury that said paper became a valid lease, with the terms thereof to date from April 1, 1889, the date of the lease, when said paper was not sued upon, or its validity questioned, and was only admissible upon the question of the yearly value of the property. Instruction No. 4 should have been rejected for the same reason. It told the jury that "a lease for years was a contract for the possession and profit of land for a determinate period, with the recompense of rent," when there was no action upon such a lease before the jury, and the lease was only introduced before them to fix the rental value of the land per annum. Instructions Nos. 1 and 2 should have been rejected for the reason that No. 2 speaks of the landlord suffering the tenant to remain in possession, etc., when the closing stipulation in said agreement was inserted to prevent Atkinson from being thereby recognized as landlord; his rights to the rents being in litigation and not de-

termined until nearly three months after the termination of said lease. No 1. contains an abstract proposition of law, and was calculated to mislead the jury, because the proviso in the lease was to prevent the recognition of the plaintiff as landlord. The court held in *Pasley* v. *English*, 10 Gratt· 236: "The court is not bound to give such an instruction, and, if it does so under circumstances calculated to mislead the jury, such instruction will be error for which the judgment will be reversed." The defendants asked the court for six instructions, all of which were rejected by the court. In No. 5 the court was asked to instruct the jury that the plaintiff was required to prove his case by a preponderance of the evidence. On what ground this instruction was rejected, it is difficult to determine. The court, however, it seems did give an instruction in lieu thereof, which was lost out of the papers when the record was printed, but was subsequently found, and is quoted above, and is almost in the same language as No. 5 asked for by defendant and rejected by the court. It has been held that a party has the right to have his instructions given in his own language, provided the facts sustain it, and it states the law correctly. *Evans' Case*, 33 W. Va. 417, (10 S. E. 792). In an action for assumpsit for use and occupation, with a bill of particulars covering the whole time that the defendants were claimed to have occupied the premises, the plaintiff surely could have been required to prove his case by a preponderance of testimony, and it was error to reject said instruction as prayed for. In my view of the case, the other instructions asked by the defendant were not material, and defendants were not prejudiced by their rejection. This action was on an account for rent running over six years. The statute of limitations was pleaded and relied on, and, in my opinion, all of the account which accrued more than five years next before the institution of the suit was barred by the statute of limitations.

### ON REHEARING.

After a careful examination of the briefs filed, and close attention to the oral arguments presented on rehearing, I have no change to make in the opinion handed down in

this case, except as to the question sought to be raised by the plea of the statute of limitations. Was the plea interposed by the defendants sufficient in form to bar any portion of the claims sued upon? Under our statute, where the claim or claims sued upon are not sufficiently described in the declaration, section 11, chapter 125, provides that in every action of assumpsit the plaintiff shall file with his declaration an account stating distinctly the several items of his claims, unless it be plainly described in the declaration; and, if he fail to do so, he shall not be permitted to prove any item not stated in such account on the trial of the case. In this manner the account filed becomes a part of the declaration, and in this particular action it is apparent that each succeeding year created a distinct and separate cause of action. Speaking of the frame of the plea of the statute of limitations, Minor, in his Institutes (volume 4, point 1, page 800), says: "Neither is it expedient, nor always admissible, to aver that * * * the defendant did not assume in manner and form as by the plaintiff is alleged within——years next before the commencement of this action; for the cause of action may not have been contemporaneous with the promise, but may have accrued afterwards, as when the promise was to pay money at a future day. The proper mode of averment (which is always proper) is that the cause of action did not accrue within—— years next before the commencement of this action." As to the form prescribed, he says (same page): "If there be several causes, say the said several supposed causes of action in the declaration mentioned did not, nor did any or either of them, 'accrue,' etc." So, also, in 13 Enc. Pl. & Prac. 214, under the head head "Requisites of Plea," we find it said: "Since the defense of the statute of limitations is an affirmative one, a plea of the statute which merely avers the pleaders' conclusions of law is bad. The plea must, as a general rule set up the facts constituting the bar, as, for instance, that the alleged cause of action did not accrue within certain designated years previous to the filing of the complaint." Our statute (section 6, chapter 104, Code, provides that "every action to recover money which is founded upon * * * any contract shall be brought in the following num-

ber of years next after the right to bring the same shall
have first accrued." Hogg, Plead. & Forms, 248, pre-
scribes the same form for plea that is found in Minor. By
the terms of the lease which was offered in evidence in
this cause, the lessees bound themselves to pay three hun-
dred dollars,—one hundred and fifty dollars on October 1,
1889, and one hundred and fifty dollars March, 1890 and
the dates of the subsequent payments are set forth in the
bill of particulars. In *Soulden* v. *Van Rensselaer*, 3 Wend.
472, the court said: "In this case the declaration is on
a promise to perform a future act. No cause of action
could, therefore, exist contemporaneously with the promise
The plea of *non assumpsit infra sex annos* was improper.
It should have been a plea of action *non accrevit infra*, etc."
So, on page 213, 13 Enc. Pl. Prac. it is said: "The plea
that the cause of action did not accrue within the statutory
time * * * is the only method of pleading the limitation
where the cause of action does not immediately arise from
the making of a promise, but results from a breach hap-
pening after the promise is made." In the case at bar
the cause of action did not arise until the failure to pay
the rent as it became due, long subsequent to the con-
tract contained in the lease. On the face of the lease it
also appears that at its date the defendants had obtained
an appeal and supersedeas to this court of the chancery
cause in which said tract of land had been sold to the
plaintiff, Atkinson, which appeal remained undecided until
June 21, 1890; and it was expressly agreed on the face of
said lease that its validity should depend on the character
of the decision of said cause then pending in this court.
Under section 18 of chapter 104 of the Code, the period
during the pendency of said appeal should not be computed
in applying the statute of limitations. For these reasons,
my conclusion is that the judgment complained of should
be affirmed.

*Affirmed.*