# CHARLESTON.

### LAZIER *v.* LAZIER.

Submitted June 12, 1891.—Decided November 21, 1891.

WILLS.

W. L., by his last will and testament, after providing for the payment of his debts, and mentioning certain advancements he had made to two of his married daughters and to one of his sons, and directing the payment of a specific legacy to another one of his married daughters, provided in the fifth clause of his said will as follows: "I hereby desire my executors to invest all my estate that may be left so that the interest shall be paid to my daughters, Sarah J. Lazier and Louisa R. Lazier during their lifetime, or as long as they remain single, and at their death or marriage I hereby desire that amount shall be equally divided among all my children, after deducting the amount already received by them including my granddaughter Myrtle M. Dorsey, who is an equal heir." *Held,* upon a bill filed by the executors of said will asking a construction of said clause, that said estate was not distributable as long as either Sarah J. Lazier or Louisa R. Lazier were in life and remained single, and that, said Louisa R., having died unmarried, said Sarah J., was entitled to the interest on the assets in the hands of the executors as long as she lived and remained single.

*Keck, Son & Fust* for appellants, cited Beach Wills § 279; 19 Gratt. 437-439; Jar. Wills (t. p.) 445 (M. pp. 479, 480.

*Cox & Baker* for appellees, cited 2 Redf. Wills (2d Ed.) §
14.

ENGLISH, JUDGE:

Some time in the year 1872, William Lazier, of Mor-
gantown, Monongalia county, W. Va., died after having
made his last will and testament, which was admitted to
probate in said county on the 15th day of May, 1872, in
which will, after mentioning in the first, second, and third
clauses thereof certain advancements which he had made
to his daughter Mary McLane and to her husband, Joseph
McLane, and to Julia Fleming, another daughter, and to
John E. Fleming, her husband, and to John McLure Laz-
ier, by the fourth clause he stated that he had no charge
against any other of his children for advancements, and
that he desired his executors to pay to his daughter Fannie
Lazier, wife of James B. Lazier, as soon as convenient, the
sum of five hundred dollars; and by the fifth clause of said
will he desired his executors to invest all of his estate that
might be left "so that the interest shall be paid to my
daughters Sarah J. Lazier and Louisa R. Lazier during
their lifetime, or as long as they remain single, and at their
death or marriage" he thereby desired that amont should
be equally divided among all his children, after deducting
the amounts already received by them, including his grand-
daughter Myrtle M. Dorsey, who is an equal heir.

The said Louisa R. Lazier having departed this life some
time in 1876, the executors named in said will in the month
of September, 1889, filed their bill in the Circuit Court of
said county, in which they exhibit a copy of said will, in
which they state, among other things, that said Louisa R.
Lazier died, having made a will in which she made sundry
bequests to different parties whose names are given, and
who are made parties defendant to said bill; and said exe-
cutors also allege that since their qualification as such they
had taken possession of the personal estate of said William
Lazier, and kept it loaned out and bearing interest as best
they could; that, while the said Louisa R. Lazier lived, the
interest of said personal estate was paid, as collected, to
the said Sarah and Louisa R. Lazier, there being no doubt

of their right to receive the same, and that after the death of the said Louisa R. Lazier they thought that the interest on the estate in their hands would belong to the said Sarah J. Lazier, and have been paying the same to her, and that the principal amount realized from said personal estate is still in their hands, as such executors.

They also allege that said William Lazier died seised of three pieces of real property, the locality and character of which they describe, two of which had been sold by them for one thousand dollars, and the third of which is described as the "Family Mansion," which remains unsold, another lot, part of the homestead lot, sold to W. L. Hagans; that the said lots up to the dates they were sold as aforesaid were by common consent of the children devisees occupied by the said Sarah J. and Louisa R. Lazier up to the date of the death of said Louisa R., and after that date by said Sarah J., and the said mansion has by like common consent been occupied by the said Sarah J. and Louisa R. up to the date of the death of said Louisa R., and since that date by the said Sarah J., who still occupies the same; that the interest on the proceeds of said real estate so sold was paid to said Sarah J. and Louisa R. as it accrued, and was collected up to the date of the death of said Louisa R., after which date it was paid to said Sarah J.; that neither said Sarah J. nor Louisa R. ever married, and they were advised that the intention of said will was that the plaintiffs should preserve said estate, and should keep the money at interest, as best they could, and pay the interest to them jointly while they both lived, and allow them to enjoy the real estate in like manner while they both lived, and after the death of the said Louisa they were advised that it was the intention of said will that the interest of the money so in the hands of the plaintiffs and loaned out should be paid to the said Sarah J. while she lives and remains unmarried, and that she should in like manner be allowed to enjoy the occupancy of said real estate until sold; but that since the death of said Louisa R., and especially of late years, their attention has been called to the clause of said will above quoted, and to the fact that it may be held to be susceptible of different construction, and that some of the devisees of

said William Lazier will claim that under a proper construction of said will one half of said estate on the death of said Louisa R. Lazier should have been distributed to and among those entitled to the same, and, calling the attention of the court to said fifth clause of said will, they say that it is uncertain and difficult to understand the force and effect of the word "children" as it there appears, and ask whether, in making a distribution of said estate, would or would not the said Sarah J. Lazier participate therein.

The plaintiffs allege that they have authority to sell all the real estate of said William Lazier of which he died seized, and that they might sell the same, or allow the said Sarah and Louisa R. to occupy and enjoy the same as they have; and that it was right and proper to pay the interest on the money so in their hands as above stated to the said Sarah and Louisa while they both lived and remained unmarried, and after the death of the said Louisa R. it was right and proper to pay said interest to the said Sarah as they have done; and they pray the will of said William Lazier may be construed in the respects in which it is uncertain and difficult of being understood as aforesaid.

The bill was answered by said Sarah J. Lazier, who in her answer claimed that under any proper construction of said will she is entitled to the interest on the whole estate of which her father died possessed, and also a share as one of his children; and that a proper construction of said will will give her the use of all personal assets as that arising from the sale of real estate, and also the use and occupation of said real estate so unsold until the same is sold, and the interest on the proceeds of such as may be hereafter sold, and also a share of said estate; and she prays the court to so decree.

Charles H. McLane, William L. McLane, Allan E. McLane, and Eliza Zoller also answered said bill, in which answer they allege that the payments of interest by the executors of said will to Sarah J. Lazier since the death of said Louiza R. Lazier on the amount due her in her lifetime have been made to said Sarah J. Lazier against their protests and with full knowledge of the facts, and have been made at their peril and on their responsibility and

risk alone. They deny that it was the intention of said William Lazier that said executors should pay all the interest on the money in their hands after the death of said Louisa R. Lazier to Sarah J. Lazier, but that it was the intention of said testator that upon the death or marriage of either of said daughters that that portion, to wit, one half of said estate, should be equally divided among all his children after deducting the amount already received by them, including his granddaughter Myrtle M. Dorsey, who is an equal heir, and they ask for a settlement of the accounts of said executors.

On the 12th day of November, 1889, a decree was rendered in said cause, in which it was decreed that, according to construction of said will, the executors of said William Lazier have full power to sell and convey the real estate of which the said William Lazier died seised, and that so far as they have sold the same it was proper, and they are charged with the proceeds thereof, and that the said proceeds of sales of real estate, along with the personal assets in their hands before the death of said Louisa R. Lazier, up to the death of said Louisa R. Lazier, were properly held by said executors of William Lazier in trust for the purpose of keeping the same loaned out at interest, and that the interest thereof was properly paid by the said executors to the said Sarah J. and Louisa R. Lazier during the lifetime of the said Louisa R., neither the said Sarah J. nor the said Louisa R. having ever been married; that according to the true construction of the said will the whole of the estate of the said William Lazier, deceased, was on the death of the said Louisa R. properly distributed to and among the children of the said William Lazier, deceased, to wit, to Mary McLane, Julia Fleming, Ann Dorsey, Henry B. Lazier, Sarah J. Lazier, Frances B. Lazier, and John M. Lazier, their assigns, the children or descendants of those who are deceased taking the share of the ancestor *per stirpes*, and subject to the advancements made in said will as having been made to their respective ancestors, and that Louisa R. Lazier or her legatees would not take a distributive share therein; and from this decree the said Sarah J. Lazier and Henry B. Lazier, executor, applied for and obtained this appeal.

In order to arrive at a conclusion in this case we are required to construe the fifth clause of the last will and testament of William Lazier, deceased, and determine what the testator really intended thereby. After providing for the payment of his debts, mentioning the advancements he had made to several of his children, and directing a specific legacy of five hundred dollars to be paid to his daughter Fannie Lazier, he uses the following language in the fifth clause of said will :

"I hereby desire my executors to invest all my estate that may be left so that the interest shall be paid to my daughters Sarah J. Lazier and Louisa R. Lazier during their lifetime, or as long as they remain single, and at their death or marriage I hereby desire that amount shall be equally divided among all my children, after deducting the amounts already received by them, including my granddaughter Myrtle M. Dorsey, who is an equal heir."

No depositions were taken in the cause, consequently we are left to the face of the will, and the facts alleged and conceded in the pleadings, in order to ascertain the circumstances surrounding said William Lazier at the time he executed said will. These circumstances may be looked to in order to place ourselves as near as may be in the attitude of the testator at the time he was disposing of his property.

It appears that said William Lazier left no widow, but left surviving him five children, namely, two sons, Henry B. Lazier (who was one of his executors) and John M. Lazier and three daughters, Francis B., who was married to James B. Lazier (to whom he bequeathed by the fourth clause of his will a specific legacy of five hundred dollars) Sarah J. Lazier, and Louisa R. Lazier. Neither Louisa R. nor Sarah J. ever married, but Louisa R. died since the decease of her father, the testator.

It appears by the allegations of the bill which are undenied that said executors sold certain lots for the aggregate sum of one thousand dollars, which constituted part of said estate, and that the mansion house remains unsold. What its value is does not appear. It is alleged in the answer of Charles H. McLane and others that the amount of money

in the hands of the executors was eighteen or twenty thousand dollars, as they were informed by the executors, but this answer is replied to generally, and there is no proof.

These circumstances would indicate that the testator intended by said fifth clause of his will to provide for the maintenance of his two unmarried daughters, Sarah J. and Louisa R. He considered that his two sons, Henry B. and John M., no doubt were able to provide for themselves, and it appears he had advanced to said John M. Lazier at different times six hundred dollars. He had also advanced to his daughter Mary McLane and her husband, one thousand eight hundred dollars, and to his daughter Julia Fleming, one thousand three hundred dollars and to Sarah J. and Louisa R., who were his only unmarried daughters, he had advanced nothing so far as the record shows.

It would then appear very reasonable and natural that in making a final disposition of his property his will should contain a clause providing for the support of those of his children to whom no advancements had been made, who were females and unmarried. One of the great cardinal rules in construing a will is to seek among the surroundings, including the context, the intention of the testator, and, pursuing this course with reference to this fifth clause, it is manifest that William Lazier intended to provide for his said two unmarried daughters until they were married, and in that way had some person to care for and maintain them, or, should it be their fortune to remain single, to furnish them with a decent support as long as they lived; and in order to effect this object he desired his executors to invest all his estate that might be left (after making the advancements he had mentioned, paying his debts, and the five hundred dollars to Fannie Lazier) so that the interest should be paid to his daughters Sarah J. and Louisa R. during their lifetime, or as long as they remained single; but as neither of them has married, we may, in construing the clause, omit what is therein said about their marriage; then it would read, "So that the interest should be paid to his said daughters during their lifetime, and at their death I hereby desire that amount shall be equally divided" *etc.*

It is contended that this distribution should take place,

under a proper construction of this language, upon the death of either of said unmarried daughters, and that, said Louisa R. having died, the money invested by said executors should be distributed. To my mind this would defeat the plain intention of the testator as expressed in said clause. He would not have said that said amount should be equally divided at their death if he had intended such division should take place upon the death of one of them. Sarah J., one of the objects of his bounty, answers and says that she is neither dead nor married; and the interest must be paid to her under the said clause during her life time, or until she marries. Louisa R. was entitled to share in this interest so long as she lived, but when she died her right to receive any portion of it ceased, and Sarah J. was the only person left who was entitled to receive said interest, until the time arrived for the distribution of the principal; and we think the executors acted properly in paying said interest, after the death of said Louisa R., to said Sarah J., and that in so doing they but carried out the intention of the testator, as expressed by the language used in said clause.

In the case of *Hooe* v. *Hooe*, 13 Gratt. 245, which is very similar to the one under consideration, Alexander H. Hooe made a very short will, which contained a single devise, as follows: "I give the use and profits of all my estate, real and personal, to my daughters who may remain single. Should they all marry, or when they die, then it is my will that my property shall be equally divided among my surviving children. My land in the county of King George, called 'Dissington' and 'Friedland' I give to my son George Mason Hooe. I do this in consideration of the attention and kindness that he has paid, and that he will continue to pay, to his sisters."

The question as to the true construction of this will was raised by the institution of an action of ejectment by the infant children of George Mason Hooe, by their next friend, against George Anna S. Hooe, one of the daughters of said testator, to recover the two tracts of land in the will mentioned and called "Dissington" and "Friedland." It appeared that these were the only tracts of land owned by

said testator; that he owned about 30 slaves; and that he had several daughters. The facts were agreed and the case submitted to the court below, and a judgment was rendered for the defendant, and a writ of error was obtained by the plaintiff, and Judge LEE, in delivering the opinion of the court, said:

"The court is of opinion that by the first clause of the will of the said Alexander S. Hooe, deceased, an estate for life was given to his daughters in the property therein described, determinable as to each upon her marriage. And the court is further of opinion that the devise of the lands called 'Dissington' and 'Friedland' to the testator's son George Mason Hooe by the third clause of the will is not to be regarded as an exception out of the general devise in the first clause to the daughters, nor as a revocation of said devise *pro tanto* upon the ground of repugnancy thereto. And the court is further of opinion, upon the true construction of said will, that the daughters did not take a mere equitable right to the use and profits of the property devised, dependent, as to the lands called 'Dissington' and 'Friedland,' upon a legal estate vested in possession in the said George Mason Hooe, but took such a legal estate in the use and profits of the testator's whole estate, including Dissington and Friedland, as entitled them to retain possession thereof until they should be married or die, and that the estate given to George Mason Hooe in Dissington and Friedland will not become vested in possession as long as either of said daughters shall remain in life and unmarried. And the court is therefore of opinion, as the defendant is one of the daughters of the said Alexander S. Hooe, and is still unmarried, the plaintiffs are not entitled to recover in this action."

It appears that she (the defendant) was the only remaining unmarried daughter of the testator, and yet it was held that the property could not be divided in accordance with the provisions of the will while one of them remained single, and the result would have been precisely the same if all of the daughters had been dead except that one. In 1st Jarman on Wills, the author, in speaking of the implication of devise to survivors, says:

"Cases the converse of the preceding have sometimes occurred, namely, where the income is expressly disposed of during the joint lives only of several co-devisees or co-legatees, with a gift over on the decease of the survivor, thus leaving unprovided for the destination of the intermediate interest accruing in the interval between the determination of the joint lives and the death of the survivor. In several such cases the interest in question has been held to belong to the survivors, either under an implied gift to them, or in virtue of the right of survivorship incident to joint tenancy," *etc.*

In the case of *Smith* v. *Oakes*, 14 Sim. 122, it was held: " The words 'during their joint and natural lives' in a settlement meant during their joint lives and the lives of each of them." In that case certain property belonging to the husband was directed to be invested by the trustee either in government funds or in certain other securities in trust for the husband and wife " during their joint and natural lives." The husband survived the wife, and it was held that a fair interpretation of the words was, " during their joint lives and during the natural lives of each of them," and that the interest should go to the husband after the death of his wife.

In the case of *McDermott* v. *Wallace*, 5 Beav. 142, a testatrix gave unto A. and B. a sum in the long annuities to be equally divided during their lives, after which she gave the said sum to C. It was held that the survivor of A. and B. took for life. In that case the gift was to Mary and Elizabeth Grant, the annual sum of twelve pounds sterling to be equally divided during their lives, after which the testatrix gave the said sum to Elizabeth F. McDermott. The master of the rolls in his opinion said: " The question is doubtful, but on the whole I think the gift over does not take effect till after the death of Mary."

In the case of *Townley* v. *Bolton*, 1 Mylne & K. 148, a testatrix gave fifty pounds sterling long annuities to her sister M. T. and her sister's husband for their joint lives, and after their decease to her nephew. The husband, having survived the sister, was held to be entitled to the long annuities. The court said : " The gift over being af-

ter the decease of the husband and wife, it is plain the testatrix intended that the survivor of the husband and wife should be entitled to the long annuities."

So that, looking through the authorities, both English and American, we find no inflexible rules for our guidance in the construction of wills, but that each will must be construed by itself, taking the language used by the testator in the light of the circumstances which surrounded him at the time it was executed ; and we must seek his meaning and intention from the context and from the language used, however inartificially such intention may have been expressed.

Returning, then, to said fifth clause of the will of William Lazier, we think that by the language therein used he intended to give the interest on his estate that might be left in the hands of his executors, after the payment of his debts and the legacy to Fanny Lazier, to his daughters Sarah J. and Louisa R. as long as they or either of them lived, unless they sooner married, and that it was not intended that the amount in the hands of the executors as an interest-bearing fund should be distributed while either of the said daughters was in life and remained single.

It is true that by our Code (section 18, chapter 71) the right of survivorship is abolished as between joint tenants, but section 19, which immediately follows, modifies said section 18, and provides that the preceding section shall not apply to any estate which joint tenants have as trustees, nor as to any estate conveyed or devised to persons in their own right, when it manifestly appears from the tenor of the instrument that it was intended that the part of the one dying should then belong to the others, *etc.* ; and thus, it is perceived, we are brought back to the original inquiry as to what was the real intention of the testator, and when this has been properly ascertained the will has been construed. Upon this question having indicated our opinion, and there being no controversy as to the right of the executors to sell the real estate, the decree complained of must be reversed with costs, and the cause remanded for further proceedings to be had therein.

REVERSED. REMANDED.