# CHARLESTON.

## EARY v. RAINES *et al.*

Submitted January 13, 1914.   Decided January 20, 1914.

1. PERPETUITIES—*Wills—Construction of Will—Estate Bequeathed—Minerals—Power of Sale.*

   Testator devised lands in severalty to certain of his children, and by a subsequent clause in his will empowered his executor to sell his "mineral right, but not for less than ten dollars per acre," and to pay certain legacies out of the proceeds to certain others of his children to whom he had given no land. He owned no mineral or mineral rights except the mineral under the land devised, and it does not appear what it is worth, if anything, per acre. *Held:*

   I        That the devisees of the lands took a defeasible fee in the mineral, liable to be defeated by a sale of it by the executor at not less than ten dollars per acre.

   II       That the power given the executor to sell must be exercised in a reasonable time and is, therefore, not void for remoteness.

   III      That on his failure, or inability to sell at ten dollars an acre, in a reasonable time, the mineral becomes the absolute property of the devisees of the land. (p. 515).

2. WILLS—*Construction—Gift.*

   A clear gift may be cut down by some other provision in a will, expressed in terms equally unambiguous, showing testator's intention to cut it down. (p. 515).

3. SAME—*Construction—Intention.*

   Testator's clearly expressed intention is his will, and must be carried out unless it controvenes some rule of law. (p. 516).

Apppeal from Circuit Court, Fayette County.

Suit by John Eary, executor, etc., against Hannah E. Raines and others. From the decree, certain defendants appeal.

*Affirmed.*

73 W. Va.

*Dillon & Nuckolls,* for appellants.

*Osenton & Horan,* for appellee.

WILLIAMS, JUDGE:

Samuel Eary died testate, disposing of land and personal property. His will bears date 26th September, 1892, and a codicil thereto, the 24th of December, 1895. They were probated 30th of January, 1896. By his will he devised to two of his sons and a daughter, viz.: Joseph Franklin Eary, S. C. Eary and Lydia Frances Atkinson, three tracts of land in severalty, and bequeathed pecuniary legacies to his daughters, Hannah Evaline Raines, Samantha Jones, and Elizabeth Ann Cole; and to his grandchildren, the children of Martha Ramsey, a deceased daughter, he gave $5.00 each. To some of his other sons he had given property in his lifetime. He named his son J. A. Eary and W. H. Harrah his executors, and authorized them, quoting his language, ''to do whatever is necessary to execute this will; also with power to sell and convey my mineral right, but not for less than ten dollars per acre; neither in making such sale shall any right to use the surface or anything on the surface be conveyed. I will that if my mineral right be sold one thousand dollars of the proceeds shall be placed in the bank to be divided between my two youngest children when they arrive at twenty-one years of age, the remainder to be divided as follows: My daughter, Samantha, one hundred and fifty dollars; my daughter Elizabeth, one hundred dollars; my son, S. C. Eary, one hundred dollars.''

By his codicil he reduced the amounts of the pecuniary legacies that he had previously given to his daughters, and devised to his son William Hunter, ''in fee simple'', a tract of land that was included in a larger tract which, by his will, he had previously devised to his son George Thomas Eary. After he had executed his will, and just a few days before making his codicil, he conveyed to George Thomas Eary all of the tract, except the portion devised to his son William Hunter Eary. The codicil also contains this clause: ''I will that of the money arising from the sale of my mineral right, two hundred dollars shall be paid to each of my children who get no land by deed or by my will or this codicil.''

J. A. Eary qualified as sole executor, and administered the personal property, the proceeds of which did not pay the pecuniary legacies in full; and, in 1909, he brought suit against the devisees and heirs, to have the will construed and his powers as executor ascertained, especially with reference to his right to sell the mineral underlying the land devised to Joseph F., S. C., and William Hunter Eary and Lydia Atkinson. On the 4th of May, 1911, the court made a decree construing the will and the codicil thereto, and decided that George Thomas Eary, by deed from his father, became the owner of the entire interest in fee simple in 42 acres and 49 poles of land; that the will gave William Hunter Eary the entire interest, surface and mineral, in the land devised to him; and that the executor was empowered, by the will, to make sale of the minerals underlying the lands devised to Joseph Franklin Eary, S. C. Eary and Lydia Frances Atkinson. The decree also directed the executor to sell said mineral, but at not less than $10 per acre, upon such terms as he deemed most beneficial to the parties concerned, and, out of the proceeds of sale, to pay $200 each, to Nora Frances Atkinson, Hannah E. Raines, Samantha E. Jones and Elizabeth Ann Cole, and $66.66 2/3 each to Averill Ramsey, McGinnis Ramsey and Sophrinia Ewing, children of testator's deceased daughter Martha Ramsey, and to hold any surplus that might remain, until the further order of the court. But before closing the sale, or disbursing any of the proceeds he was required to report his sale to court for confirmation. From that decree Lydia Atkinson, Joseph Franklin Eary and S. C. Eary have appealed.

It is urged that the court erred in holding that the devise of the lands to appellants did not pass to them the minerals underlying the lands, and in decreeing that the executor had a right to sell said minerals. That the language employed by the testator in making the several devises to these appellants is sufficiently clear to comprehend, and that it does, in fact, comprehend and pass all of the estate and interest, including the mineral, which the testator had in the land, there can be no question. Respecting the devise to his son Joseph Franklin, he says, "I will to my son Joseph Franklin, the following described tract of land, to-wit:" then follows a

73 W. Va.

description of it.    In the devise to his daughter Lydia Frances, the language employed is the same; and respecting the devise to his son S. C. Eary, he says, ''I will the tract of land which I purchased of the heirs of Elizabeth Hess, wife of Christopher Hess, to my son S. C. Eary, and if I sell or dispose of the same he is to get four hundred dollars of the proceeds of the sale.'' Testator did not dispose of this tract in his lifetime, and hence the condition does not affect the devisee's estate.    The testator, of course, had control of his entire property during his life, independent of any express reservation in his will.    But the title to the mineral passed to appellants, subject to the power given to the executor to make sale of it, provided he could realize $10 an acre.    Appellants took only a defeasible fee in the mineral under their lands.    It is just as clear, by a subsequent clause of the will and the codicil, that the testator intended to make, as in fact he did make, provision for payment of legacies to certain ones of his children to whom he had given no land, as it is that he devised the land and mineral to certain others of them.    The money with which to pay these legacies was to be derived from the sale of his mineral, provided it could be sold for $10 per acre.    There is no repugnancy between the two provisions.    Testator's purpose is unambiguous.    His expressed intention is his will, and it must be carried out, unless to do so would violate some rule of law.    *Hays* v. *Freshwater,* 47 W. Va. 217; *Behrens* v. *Bauman,* 66 W. Va. 56; and *Neal* v. *Hamilton Co.,* 70 W. Va. 250.    It appears from the evidence that testator owned no other mineral than that which underlies the lands devised to appellants.    It is, therefore, clear that, by ''mineral right'', he meant the mineral under those lands.    Having first devised to appellants the land, which included the mineral in it, he then authorized a sale of the mineral for the benefit of other children, but only on condition that it could be sold for $10 an acre.    If it can not be sold at that price or more, per acre, then it becomes appellants' property absolutely.    The result is, that appellants now have a defeasible estate in fee, and the legatees to whom the proceeds, in the event of a sale, are given, have a contingent interest in the mineral.    Testator's intention to provide for his children who had received no land, out of the proceeds of the sale of his minerals, and thus to cut

down the devises to appellants, is just as clear and unambiguous as his intention was to give the lands to them. If sale at $10 an acre can be made it defeats their estate in the mineral. Otherwise they remeain the owners of it in fee.

It is insisted that the power of sale is void, for the alleged reason that it violates the rule against perpetuities. That the rule embraces powers, as well as estates, seems to be well settled. 30 Cyc. 1493; Gray on the Rule Against Perpetuities, (2nd ed.) sec. 473; *Lawrence's Estate,* 136 Pa. St. 354, 20 Am. St. Rep. 929; Minor on Real Property, sec. 1326. To make it fall within the rule inhibiting perpetuities, it must appear that there is a possibility that the power may not be exercised within the life, or lives, of persons in being at the death of the testator and ten months and twenty-one years thereafter. It is argued that, because no limitation is put upon the time within which the executor could sell, coupled with the fact that he is forbidden to sell at less than $10 per acre, creates a contingency that may not happen until a time too remote. It was not necessary for testator to specify a time within which the executor should sell, as the law requires him to sell within a reasonable time. He evidently intended that a sale within a reasonable time should take place. The executor alone is given the power to sell. Had the testator provided that the power might be exercised by someone else, if not exercised by the executor, it might then have been too remote. *Barnum's Case,* 26 Md. 119. But, in empowering a trustee or executor to sell property for the purpose of paying debts or legacies, it is not customary to limit the time within which the power shall be exercised, and such powers are upheld as being no infringement of the rule against perpetuities. "Such powers are rarely, if ever, objectionable under the Rule against Perpetuities. The creditors or legatees have by reason of the power a present interest in the property, of the nature of a charge, and may compel the donee of the power to sell at once." 30 Cyc. 1493. Gray on the Rule Against Perpetuities, secs. 486-490. The courts seem to hold universally that such powers are to be exercised within a reasonable time and, therefore, do not violate the rule. But it is urged that the value of the minerals, if any exist under the land, is uncertain, and that it may not bring $10 per acre. Granting

that the value is uncertain, it does not render the power of sale void. Because the executor must sell, if at all, within a reasonable time. If he is unable to sell at $10 an acre within a reasonable time, his power ceases, because the testator fixed a price impossible to be realized. It is a power to be exercised in a particular way. The will limits it in a manner that may defeat certain legacies. Still, if they are defeated, it can not be said that it was not the will of the testator that it should be so, for he made the condition which may operate to make the execution of the power impossible. If the executor is unable, within a reasonable time, to sell at $10 an acre, the power ends, and the rights to the mineral remain vested in the devisees of the land. The legacies provided to be paid out of the proceeds are, of course, contingent upon the executor's selling the mineral at not less than $10 per acre.

It appears from the evidence that the quantity in the three tracts devised to appellants is 227 acres. The mineral thereunder, at $10 per acre, would produce $2,270. The lower court by its decree determined how $1,000, only, of the proceeds should be applied. It reserved, for future determination, the question of what disposition should be made of the balance. That question is, therefore, not for us to decide at this time.

It is assigned as error that the court heard the cause upon improper evidence. It is not necessary to pass upon this assignment for the reason that we can see appellants are not prejudiced. Granting that there is improper evidence in the record and that it influenced the chancellor in making his decision, still we see there is enough proper evidence to support his decree.

The decree is affirmed.

*Affirmed.*