98 S.E.2d 727 (1957)
Helena Schwertfeger WEISS, Executrix of the Will of Lena Schwertfeger, Deceased,
v.
Joseph S. SOTO, State Tax Commissioner, et al.
No. 10870.
Supreme Court of Appeals of West Virginia.
Submitted April 30, 1957.
Decided June 11, 1957.
*730 W. W. Barron, Atty. Gen., Giles D. H. Snyder, Asst. Atty. Gen., for plaintiff in error.
Schmidt, Hugus & Laas, Henry S. Schrader, Wheeling, for defendant in error. *728
*729 HAYMOND, Judge.
This is a statutory appeal, under Section 21, Article 11, Chapter 11, Code, 1931, as amended, from an assessment by the state tax commissioner on February 21, 1955, of an inheritance tax of $43,642.61 against the estate of Lena Schwertfeger, who died testate in Wheeling, Ohio County, West Virginia, December 18, 1952. The plaintiff in the proceeding on appeal is Helena Schwertfeger Weiss, Executrix of the will of Lena Schwertfeger and the principal defendants are Joseph S. Soto, state tax commissioner, and Helena Schwertfeger Weiss, Amelia Schwertfeger Stamp, and Marie Schwertfeger Aul, the three daughters and residuary beneficiaries under the will of Lena Schwertfeger.
On the appeal to the Circuit Court of Ohio County that court, upon the petition of the plaintiff, the separate answers of the state tax commissioner and the three daughters of the testatrix, in which each daughter challenges the assessment as erroneous, and upon certain facts presented as evidence by written stipulations of the attorneys for the respective parties, by final order entered September 11, 1955, held the assessment of $43,642.61 to be erroneous. From that order this Court granted this writ of error on January 28, 1957, upon the application of the state tax commissioner. On April 30, 1957, the case was submitted for decision upon the motion of the plaintiff to affirm the judgment of the circuit court and the oral arguments and the briefs of the attorneys for the respective parties.
The controlling question presented is whether, under the provisions of the holographic will of F. C. H. Schwertfeger, Lena Schwertfeger, his wife, was given a fee simple estate or a life estate with a remainder to his three daughters in the property disposed of in the residuary clause of the will.
The defendant, state tax commissioner, assigns as error the action of the circuit court (1) in admitting evidence relating to the circumstances existing when the husband's will was made and the construction of his will by interested parties between the time of his death in 1910 and the death of his wife in 1952; (2) in holding that the wife received only a life estate under the will of the husband; and (3) in holding erroneous the tax assessment of $43,642.61 because the assets of the estate of the husband were included in the estate of the wife in assessing the tax.
There is no dispute among the beneficiaries concerning the estate created by the residuary clause of the will of the husband and the sole controversy involved in this proceeding is between the beneficiaries and the state tax commissioner concerning the validity of the assessment of the tax.
The principal evidence offered and introduced consists of facts embraced in two written stipulations of the attorneys for the respective parties in which they agree that such facts are true. The state tax commissioner contends, however, that all facts relating to the pertinent conditions *731 existing when the husband made his will, the conduct of the beneficiaries after his death, and the construction of the will by them between the time of his death and the death of his wife, contained in the stipulations, are not admissible as evidence because they constitute parol evidence to contradict, add to, detract from, vary or explain the plain and unambiguous terms of the residuary clause of the will; and he objected to the introduction of such facts in evidence on that ground. The circuit court overruled the objection and admitted all such facts as evidence.
F. C. H. Schwertfeger died testate July 18, 1910, in Ohio County, West Virginia. His will, which was dated February 22, 1908, and was duly probated in that county July 29, 1910, was personally designed and prepared by him apparently without advice or assistance from anyone skilled or experienced in the preparation of wills. It contains seven numbered paragraphs. Paragraph 1 appoints his wife executrix of the will with the request that no security be required of her. Paragraph 2 directs her to pay all just debts and funeral expenses. Paragraph 3 devises to Amelia Schwertfeger Stamp, a daughter, a parcel of improved real estate absolutely in fee simple and bequeaths to her fifteen thousand dollars. Paragraph 4 devises to Mary Schwertfeger Aul, another daughter, a parcel of improved real estate absolutely in fee simple and bequeaths to her fifteen thousand dollars. Paragraph 5 devises to Helena Schwertfeger Weiss, another daughter, a parcel of improved real estate and bequeaths to her fifteen thousand dollars. Paragraph 6 bequeaths to the Trustees of the German Zions Lutheran Church of Wheeling two thousand dollars to be held as an endowment fund for that church. Paragraph 7, the meaning and effect of which must be determined in this proceeding, is expressed in this language:
"I, devise and bequeath unto my beloved wife Lena Schwertfeger, all of the rest and residue of my real and personal property wherever the same my be situated, absolutely in fee simple, and after the death of my said Dear wife, the rest and residue of my real and personal property shall be devided between my said three daughters share and share a like."
Lena Schwertfeger, the wife of F. C. H. Schwertfeger, qualified as executrix of his will and acted in that capacity until May 14, 1948 when she resigned because of infirmities attendant upon her advanced age of ninety nine years at the time of her resignation. In administering the estate of her husband under his will she and her successor kept the assets of the husband separate from the property of the wife who used only a part of the income from his estate and disposed of or consumed little, if any, of the corpus. When the wife died on December 18, 1952, at the age of 103 years, the amount of the unused and undistributed income from the estate of the husband was $212,213.95, the appraised value of her separate estate was $98,781.69, and the value of the assets of the husband's estate, which consisted principally of stocks and bonds, had appreciated from the original appraised value of $323,422.29 and the book value fixed by him of $592,728.53 to the subsequently appraised value of $1,099,935.73.
An inheritance tax, based on the original appraised value of the wife's estate of $98,781.69, was paid; and an inheritance tax, based on the original appraised value of $323,422.29, or the book value of $592,728.53, of the husband's estate was likewise paid. The specific bequests in the will of the husband and the specific bequests in the will of the wife were paid and the assets covered by the residuary clause in each will were distributed to the three daughters in equal shares in the belief that the wife received only a life estate in such assets under the will of the husband. All these transactions occurred before the assessment involved in this proceeding was made by the state tax commissioner and, except for pending inheritance tax claims, both estates have been finally settled.
*732 After conferences in 1953 and 1954 between the state tax commissioner and attorneys representing the estate of Lena Schwertfeger and an examination by the state tax commissioner of the wills of Lena Schwertfeger and F. C. H. Schwertfeger the state tax commissioner reached the conclusion that Lena Schwertfeger received an estate in fee simple in the residuary estate of her husband and made the inheritance tax assessment involved in this proceeding against her estate.
From the statement of a close associate of F. C. H. Schwertfeger during many years, incorporated in one of the stipulations, it appears that he was born in Germany and came to the United States when a child; that he was poor during his youth; that he became associated in the mercantile business with George E. Stifel, beginning as an errand boy and ultimately becoming a partner and the owner of approximately one-half of the business; that when he and his wife were married they were very poor; that they lived at different times in inexpensive houses in different sections of Wheeling for one of which they paid rent of $10 per month; that his wife did the housework without servants; that he was a devoted father and was deeply interested in his family; that he attended few social functions; that he was reticent and did not discuss his business affairs with other persons but personally attended to many details to avoid the expense of employing other persons to render such service; that prior to 1900 he made many investments in real estate; that some of these investments were made in the name of a few other persons but the money with which to purchase and improve the various properties was furnished by him and those properties were held or sold by the person in whose name they had been purchased for the mutual benefit of such person and Mr. Schwertfeger and in one instance a substantial profit was equally divided; that the husband of his daughter Amelia Schwertfeger Stamp was not a successful businessman and several enterprises in which he was engaged were financial failures; that in some of those unsuccessful ventures Mr. Schwertfeger gave his son-in-law financial aid and assistance; that the husband of his daughter Marie Schwertfeger Aul was not successful in business; that the husband of his daughter Helena Schwertfeger Weiss was a successful businessman and made a large fortune; and that Mr. Schwertfeger aided him financially when he began his business career.
The language of the residuary clause of the will here under consideration is not clear and unambiguous, but is ambiguous and susceptible of two interpretations. The ambiguity appears on the face of the written instrument and results from the repugnant or inconsistent provisions that the rest and residue of the real and personal property of the testator is bequeathed and devised to his wife "absolutely in fee simple," and that after the death of the wife such rest and residue "shall be devided between my said three daughters share and share a like." It is a patent ambiguity and not a latent ambiguity. Hunt v. Furman, 132 W.Va. 706, 52 S.E.2d 816; Hobbs v. Brenneman, 94 W.Va. 320, 118 S.E. 546.
A patent ambiguity is defined and discussed in the opinion in Hobbs v. Brenneman, 94 W.Va. 320, 118 S.E. 546, in this quotation: "A patent ambiguity is one appearing on the face of the will. If the ambiguity occurs in the wording of a will, producing a palpable uncertainty on the face of the instrument, extrinsic evidence cannot remove the difficulty without putting new words in the mouth of the testator, and, in effect making a new will for him. In such case the only aid which can be brought to the construction of the bequest is by comparing it with other parts of the will, and thus ascertaining the true meaning and giving effect to the whole will and every part thereof." A latent ambiguity is also defined in the opinion in that case in a quotation as "that which seemeth certain and without ambiguity for anything that appeareth *733 upon the face of the deed or instrument, but there is some collateral matter out of the deed that breedeth the ambiguity." See also Paxton v. Benedum-Trees Oil Company, 80 W.Va. 187, 94 S.E. 472; 95 C.J.S., Wills, Section 636b; Black's Law Dictionary, Fourth Edition, page 105.
Extrinsic evidence to establish the intention of a testator in the disposition of his estate is admissible only where there is a latent ambiguity in the will. Goetz v. Old National Bank of Martinsburg, 140 W.Va. 422, 84 S.E.2d 759; Harper v. Cumberland and Allegheny Gas Company, 140 W.Va. 193, 83 S.E.2d 522; Hunt v. Furman, 132 W.Va. 706, 52 S.E.2d 816; Hedrick v. Hedrick, 125 W.Va. 702, 25 S.E.2d 872; Sands v. Sands, 122 W.Va. 697, 12 S.E.2d 918; Hobbs v. Brenneman, 94 W.Va. 320, 118 S.E. 546; Couch v. Eastham, 29 W.Va. 784, 3 S.E. 23. In the opinion in the Hobbs case this Court said: "The intention of the testator is the controlling factor in the interpretation of a will. When the intention is ascertained from an examination of all its parts the problem is solved. The interpretation of a will is simply a judicial determination of what the testator intended; and the rules of interpretation and construction for that purpose formulated by the courts in the evolution of jurisprudence through the centuries are founded on reason and practical experience. It is wise to follow them, bearing in mind always that the intention is the guiding star and when that is clear from a study of the will in its entirety, any arbitrary rule however ancient and sacrosanct applicable to any of its parts must yield to the clear intention. Of course, if the testator attempts to make a disposition forbidden by law it will not be effectuated; as for instance, where the intent is to violate the rule against perpetuities. The intention must be deduced from the words of the will itself. `The true inquiry is, not what the testator meant to express, but what the words do express.' Couch v. Eastham, 29 W.Va. 784 [3 S.E. 23]; Wills v. Foltz, 61 W.Va. 262 [56 S.E. 473, 12 L.R.A.,N.S., 283]; Neal v. Hamilton, 70 W.Va. 250 [73 S.E. 971]; Allison v. Allison, 101 Va. 537 [44 S.E. 904, 63 L.R.A. 920]; Dunham v. Averhill, 45 Conn. 61; Lomax v. Lomax, 218 Ill. 629 [75 N.E. 1076, 6 L.R.A.,N.S., 942]."
As the ambiguity in the residuary clause of the will is a patent, not a latent, ambiguity, the evidence embraced in the stipulation relating to the conduct of the beneficiaries after the death of the testator and the construction of the will by them between the time of his death and the death of his wife is not admissible and should not have been considered by the circuit court. Goetz v. Old National Bank of Martinsburg, 140 W.Va. 422, 84 S.E.2d 759; Harper v. Cumberland and Allegheny Gas Company, 140 W.Va. 193, 83 S.E.2d 522; Hunt v. Furman, 132 W.Va. 706, 52 S.E.2d 816; Hobbs v. Brenneman, 94 W.Va. 320, 118 S.E. 546. The evidence contained in the stipulation relating to the circumstances surrounding the testator when he made his will, though admissible to place the court, as nearly as practicable, in the position of the testator when he made the will as an aid in ascertaining its true construction, is not competent to establish the intention of the testator in the use of the language in the residuary clause of the will, and should not have been considered by the circuit court for that purpose.
Though it was error for the circuit court in the trial of this appeal without a jury to admit the evidence relating to the conduct of the beneficiaries of the will after the death of the testator and the construction of the will by them between the time of his death and the death of his wife, to show the intent of the testator, and to consider the evidence relating to the circumstances surrounding the testator when he made his will, for that purpose, the admission of the evidence of the conduct of the beneficiaries and the construction of the will by them and the action of the court in considering the evidence of the circumstances surrounding the testator when he made his will to show his intention are net *734 errors which call for reversal of the final judgment as there is sufficient competent evidence to sustain and justify such judgment. "When a case is tried by a court in lieu of a jury, it is not an error, for which the appellate court will reverse, to hear illegal testimony, if there be enough legal testimony to justify the judgment." Point 1, syllabus, Rohrbaugh v. Rohrbaugh, 136 W.Va. 708, 68 S.E.2d 361; point 1, syllabus, Abrahams v. Swann, 18 W.Va. 274, 41 Am. Rep. 692.
Extrinsic evidence of any facts known to the testator which may reasonably be supposed to have influenced him in the disposition of his property, and of all the surrounding circumstances when he made the will, is admissible to place the court, as nearly as practicable, in the position of the testator when he made his will as an aid in ascertaining its true construction. Ball v. Ball, 136 W.Va. 852, 69 S.E.2d 55; Wilcox v. Mowrey, 125 W.Va. 333, 24 S.E.2d 922; Henry v. Haymond, 77 W.Va. 173, 87 S.E. 78; Collins v. Feather, 52 W.Va. 107, 43 S.E. 323, 61 L.R.A. 660, 94 Am.St.Rep. 912; Furbee v. Furbee, 49 W.Va. 191, 38 S.E. 511; Lazier v. Lazier, 35 W.Va. 567, 14 S.E. 148; Couch v. Eastham, 29 W.Va. 784, 3 S.E. 23; Wilson v. Perry, 29 W.Va. 169, 1 S.E. 302; Atkinson v. Sutton, 23 W.Va. 197; French v. French, 14 W.Va. 458; Magers v. Edwards, 13 W.Va. 822; Hunter v. First National Exchange Bank of Roanoke, 198 Va. 637, 96 S.E.2d 104; Pitman v. Rutledge, 198 Va. 567, 95 S.E.2d 153; Hatcher v. Hatcher, 80 Va. 169; Wootton v. Redd, 12 Grat. 196.
In 20 Michie's Jurisprudence, Wills, Section 93, the text supported by the citation of numerous decided cases contains these paragraphs:
"To aid in ascertaining the true construction of a will, evidence in a proper case may be received as to any acts known to the testator which may reasonably be supposed to have influenced him in the disposition of his property, and as to all the circumstances surrounding him at the time the will was madeas, for example, the situation of the parties, the ties which connected the testator with the objects of his bounty, and the motives which probably influenced him in disposing of his property. * * *.
"The source of the intention of the maker of a will is the will itself viewed in the light of environment, relationship, duty and other allowable circumstances and conditions surrounding the testator, which might almost be termed the imponderables of the situation. And evidence to place the court in the position of the testator at the time of making his will, and to show the state of his property, has always been regarded as legitimate and entitled to have its just bearing upon the legal import and effect of the will."
In 95 C.J.S., Wills, Section 636b, the text contains these statements:
"While extrinsic evidence is not admissible to remove a doubt or ambiguity which may fairly be resolved by a resort to the context of the instrument, where the language of a will is doubtful or ambiguous, parol or extrinsic evidence may be admitted for the purpose of assisting the court in ascertaining its meaning, or as the rule is frequently stated, when it is necessary, in order to enable the court to ascertain the intention of the testator; * * *.
"Where extrinsic evidence is admitted to aid in the construction of a will containing doubtful language such evidence is limited to that purpose alone, and it may not be used to show a different intent or a different person or object, from that disclosed, although perhaps obscurely by the will itself. * * *."
In point 2 of the syllabus in Atkinson v. Sutton, 23 W.Va. 197, this Court held that "Extrinsic evidence, which is introduced to *735 place the court, as nearly as practicable, in the position of the testator and show the state of his property at the time of making his will, should be received by the court and is entitled to have its just bearing upon the legal import and effect of the will."
Under the foregoing authorities, the evidence relating to the circumstances surrounding the testator when he made the will is admissible to aid in the proper construction of the language of the residuary clause and to enable the Court to determine its meaning and effect.
The paramount rule in construing a will is that the intention of the testator controls and must be given effect, unless that intention violates some positive rule of law or public policy. Goetz v. Old National Bank of Martinsburg, 140 W.Va. 422, 84 S.E.2d 759; Harper v. Cumberland and Allegheny Gas Company, 140 W.Va. 193, 83 S.E.2d 522; Young v. Lewis, 138 W.Va. 425, 76 S.E.2d 276; Ball v. Ball, 136 W.Va. 852, 69 S.E.2d 55; Hunt v. Furman, 132 W.Va. 706, 52 S.E.2d 816; Stephenson v. Kuntz, 131 W.Va. 599, 49 S.E.2d 235; Wheeling Dollar Savings and Trust Company v. Stewart, 128 W.Va. 703, 37 S.E.2d 563; Hedrick v. Hedrick, 125 W.Va. 702, 25 S.E.2d 872; In re Reed's Estate, 125 W.Va. 555, 26 S.E.2d 222; Wilcox v. Mowrey, 125 W.Va. 333, 24 S.E.2d 922; Harris v. Eskridge, 124 W.Va. 283, 20 S.E.2d 465; In re Werkman's Will, 122 W.Va. 583, 13 S.E.2d 73; In re Conley, 122 W.Va. 559, 12 S.E.2d 49; Davis v. Davis, 118 W.Va. 328, 190 S.E. 331; Brookover v. Grimm, 118 W.Va. 227, 190 S.E. 697; Hobbs v. Brenneman, 94 W.Va. 320, 118 S.E. 546; McCreery v. Johnston, 90 W.Va. 80, 110 S.E. 464; Woodbridge v. Woodbridge, 88 W.Va. 187, 106 S.E. 437; Eary v. Raines, 73 W.Va. 513, 80 S.E. 806; Suter v. Suter, 68 W.Va. 690, 70 S.E. 705, Ann.Cas.1912B, 405; Irvin v. Stover, 67 W.Va. 356, 67 S.E. 1119; Behrens v. Baumann, 66 W.Va. 56, 66 S.E. 5, 27 L.R.A., N.S., 1092; Harris v. Neal, 61 W.Va. 1, 55 S.E. 740; Bently v. Ash, 59 W.Va. 641, 53 S.E. 636; LeSage v. LeSage, 52 W.Va. 323, 43 S.E. 137; Furbee v. Furbee, 49 W.Va. 191, 38 S.E. 511; Morris v. Morris, 48 W.Va. 430, 37 S.E. 570; Broderick v. Broderick, 35 W.Va. 620, 14 S.E. 157; Cresap v. Cresap, 34 W.Va. 310, 12 S.E. 527; Couch v. Eastham, 29 W.Va. 784, 3 S.E. 23; Hinton v. Milburn, 23 W.Va. 166; Graham v. Graham, 23 W.Va. 36, 48 Am.Rep. 364; French v. French, 14 W.Va. 458; Magers v. Edwards, 13 W.Va. 822; Bell's Admr. v. Humphrey, 8 W.Va. 1; Whelan v. Reilly, 5 W.Va. 356; Liston v. Jenkins, 2 W.Va. 62.
In ascertaining the intention of the testator, the entire will should be considered. Young v. Lewis, 138 W.Va. 425, 76 S.E.2d 276; Ball v. Ball, 136 W.Va. 852, 69 S.E.2d 55; Dingess v. Drake, 135 W.Va. 502, 64 S.E.2d 601; Davis v. Davis, 118 W.Va. 328, 190 S.E. 331; Sweeney v. Security Trust Company, 116 W.Va. 344, 180 S.E. 897; National Bank of Fairmont v. Kenney, 113 W.Va. 890, 170 S.E. 177; Totten v. Dawson, 104 W.Va. 274, 139 S.E. 858; Woodbridge v. Woodbridge, 88 W.Va. 187, 106 S.E. 437; Furbee v. Furbee, 49 W.Va. 191, 38 S.E. 511; Hays v. Freshwater, 47 W.Va. 217, 34 S.E. 831; Graham v. Graham, 23 W.Va. 36, 48 Am.Rep. 364. The intent expressed by the words of the will governs, and courts may not conjecture or surmise what the testator intended to express. Goetz v. Old National Bank of Martinsburg, 140 W.Va. 422, 84 S.E.2d 759; Young v. Lewis, 138 W.Va. 425, 76 S.E.2d 276; Hunt v. Furman, 132 W.Va. 706, 52 S.E.2d 816; Stephenson v. Kuntz, 131 W.Va. 599, 49 S.E.2d 235; Wheeling Dollar Savings and Trust Company v. Stewart, 128 W.Va. 703, 37 S.E.2d 563; Sweeney v. Security Trust Company, 116 W.Va. 344, 180 S.E. 897; Totten v. Dawson, 104 W.Va. 274, 139 S.E. 858; Neal v. Hamilton Company, 70 W.Va. 250, 73 S.E. 971; Wills v. Foltz, 61 W.Va. 262, 56 S.E. 473, 12 L.R.A.,N.S., 283; Wootton v. Redd, 12 Grat. 196.
*736 The true inquiry in the construction of a will is not what the testator meant to express but what the words he has used do express. Ball v. Ball, 136 W.Va. 852, 69 S.E.2d 55; Hunt v. Furman, 132 W.Va. 706, 52 S.E.2d 816; Hobbs v. Brenneman, 94 W.Va. 320, 118 S.E. 546; Wills v. Foltz, 61 W.Va. 262, 56 S.E. 473, 12 L.R.A.,N.S., 283; Pack v. Shanklin, 43 W.Va. 304, 27 S.E. 389; Couch v. Eastham, 29 W.Va. 784, 3 S.E. 23. In construing a will the intention must be ascertained from the words used by the testator, considered in the light of the language of the entire will and the circumstances surrounding the testator when he made his will. Young v. Lewis, 138 W.Va. 425, 76 S.E.2d 276; Ball v. Ball, 136 W.Va. 852, 69 S.E.2d 55; Wilcox v. Mowrey, 125 W.Va. 333, 24 S.E.2d 922; Hobbs v. Brenneman, 94 W.Va. 320, 118 S.E. 546; Couch v. Eastham, 29 W.Va. 784, 3 S.E. 23; Hunter v. First National Exchange Bank of Roanoke, 198 Va. 637, 96 S.E.2d 104; Pitman v. Rutledge, 198 Va. 567, 95 S.E.2d 153; Collins v. Hartford Accident and Indemnity Company, 178 Va. 501, 17 S.E.2d 413, 137 A.L.R. 1046; Hatcher v. Hatcher, 80 Va. 169; Wootton v. Redd, 12 Grat. 196; 20 Michie's Jurisprudence, Wills, Section 81.
In the construction of a will technical words are presumed to have been used in a technical sense and should ordinarily be given their strict meaning; but this rule is not absolute and when it appears from the context that another meaning was intended such words will not be applied in their technical sense. Brookover v. Grimm, 118 W.Va. 227, 190 S.E. 697; Jackson v. Osborne, 108 W.Va. 480, 151 S.E. 709; Hobbs v. Brenneman, 94 W.Va. 320, 118 S.E. 546; Cowherd v. Fleming, 84 W.Va. 227, 100 S.E. 84; Collins v. Feather, 52 W.Va. 107, 43 S.E. 323, 61 L.R.A. 660, 94 Am.St.Rep. 912.
As the will of F. C. H. Schwertfeger is ambiguous in that it contains a patent ambiguity apparent from the language of the residuary clause, it is necessary to construe that clause. From the language of the will, considered in its entirety, and the surrounding circumstances when it was made, it is clear that the paramount intention of the testator was to give his wife a life estate, and not a fee simple estate, in his residuary estate with a remainder in fee simple to his three daughters in equal shares.
Though the testator used the words "absolutely in fee simple" in the residuary clause and the words "in fee simple" in three preceding paragraphs, it is unlikely that he knew their legal import and he did not intend to give them their technical meaning. He was intelligent and successful in his business affairs but he was not an educated man and during his youth he did not have the time, or the means, or the opportunity to attend high school or college. He was unable to spell correctly some common words as is indicated by his incorrect spelling of the word "revoking" in the first sentence of the will, of the word "which" in the third paragraph, of the word "forty" in the third, fourth, and fifth paragraphs, of the word "fifteen" in the same paragraphs, and of the words "may" and "divided", and his misuse of the word "alike", in the seventh paragraph of the will. He personally designed his will and he wrote and signed it in his own handwriting, apparently without the aid or advice of any other person who was skilled or experienced in the preparation of a will.
When he made his will the testator knew the financial condition of his wife and his three daughters. He also knew the total value of his estate which he fixed at $592,728.53 as indicated by his books. He had made and accumulated his estate by hard work, thrift and attention to the details of his business affairs. He saved and wisely invested the money which he worked so hard and faithfully to acquire. He knew that, after the payment of the specific bequests to his daughters, to each of whom he gave an improved parcel of real estate and $15,000, and the specific bequest of *737 $2,000 to the trustees of the German Zions Lutheran Church of Wheeling, the income from the residue of his estate would be sufficient to maintain and support his wife adequately as long as she lived and that she would not need to have or use the corpus of the residue of his estate to satisfy any of her financial needs or requirements. He also knew and realized that his specific gifts to his daughters, especially those to two of them, in view of the weak financial condition of their husbands, would not be sufficient to support and maintain them as he, a devoted father, wished them to be supported and maintained.
From the language of the entire will, considered in the light of the foregoing facts and circumstances surrounding the testator when he made his will, his manifest intention, as expressed in the residuary clause, was to give to his wife during her life and to his daughters equally after her death the rest and residue of his estate. As it is also clear that in using the words "absolutely in fee simple" in that clause the testator did not intend to give them their technical meaning they will not be so considered but will be given the meaning which effectuates his intention that they should operate to create a life estate only in his wife. If he had intended to use those words in their technical sense he would have ended the clause with them as final words and he would not have written the additional words "after the death of my said Dear wife, the rest and residue of my real and personal property shall be devided between my said three daughters share and share a like", which would have been entirely futile and utterly without meaning if he had intended to create an estate in fee simple in his wife.
The phrase just quoted is clear and unambiguous and standing alone is not open to judicial interpretation. It contains no technical terms. Instead of technical terms it contains words of ordinary meaning and familar significance which are commonly known and generally understood. As an ordinary layman he fully understood their meaning and he used them to accomplish his express purpose to give the residue of his estate to his daughters after the death of his wife. He did not regard them as empty or meaningless, as mere sounding brass or a tinkling cymbal, or intend that they should be ignored or stricken from his will in the disposition of his estate under its terms and provisions. They can not be disregarded in the construction of the residuary clause but must be considered together with all the other provisions of the will in giving effect to the intention of the testator which must govern and control and supersede all other rules of construction however ancient or sacrosanct they may be. Hobbs v. Brenneman, 94 W.Va. 320, 118 S.E. 546; Hatcher v. Hatcher, 80 Va. 169. The words themselves in the foregoing phrase sustain the construction now placed upon the residuary clause and impel the conclusion that, notwithstanding the words "absolutely in fee simple," which the testator did not use in their technical sense, he intended to give the residue of his estate to his wife only as long as she lived and to his daughters equally after her death. The soundness of his belief that the income from the residue of his estate would be sufficient for all her needs is fully demonstrated by the accumulation before her death of income in the amount of $212,213.95 which was never used or expended by her and which by her will, following the example of her husband, she bequeathed equally to the three daughters.
The residuary clause of the holographic will of F. C. H. Schwertfeger that "I, devise and bequeath unto my beloved wife Lena Schwertfeger, all of the rest and residue of my real and personal property wherever the same my be situated, absolutely in fee simple, and after the death of my said Dear wife, the rest and residue of my real and personal property shall be devided between my said three daughters share and share a like.", considered and construed in the light of the language of the entire will and the circumstances surrounding the testator when he made the *738 will, as an aid in ascertaining the intention of the testator, creates a life estate in the wife with a remainder in fee simple in the three daughters in equal shares in the residue of the real and personal estate of the testator at the time of his death.
The defendant, state tax commissioner, in support of his contention that the residuary clause created a fee simple estate in the wife of the testator, cites and relies upon numerous decisions of this Court which determine and declare the law of this State as it existed in 1910, when the will of F. C. H. Schwertfeger became effective and before the enactment in 1931 of the present statute, Section 16, Article 1, Chapter 36, Code, 1931, with respect to a remainder or a limitation over after a gift of a fee simple estate or a limitation upon an absolute gift of personal property. That statute does not apply to the instant will which was made before the statute was enacted and the effect of the residuary clause must be determined under the law of this State as it existed when the testator died in 1910.
The state tax commissioner insists that the phrase "after the death of my said Dear wife, the rest and residue of my real and personal property shall be devided between my said three daughters share and share a like." is a limitation over after a gift of an estate in fee simple in the wife and is void at common law under the decisions of this Court in Morgan v. Morgan, 60 W.Va. 327, 55 S.E. 389, 19 Ann.Cas. 943; Totten v. Dawson, 104 W.Va. 274, 139 S.E. 858; Ogden v. Maxwell, 104 W.Va. 553, 140 S.E. 554; Hustead v. Murray, 115 W.Va. 660, 177 S.E. 898; Brookover v. Grimm, 118 W.Va. 227, 190 S.E. 697; Swan v. Pople, 118 W.Va. 538, 190 S.E. 902. In the instrument under consideration in each of those cases an attempt to create a life estate was coupled with an absolute and unlimited power of disposition, express or implied, which fully comprehended the property affected and operated to create an estate in fee simple, or a fee simple estate was clearly created by the unequivocal language of the instrument; and the unlimited power of disposition, following the interest designated as a life estate, elevated the estate passed by the instrument to a fee simple estate. The power of disposition, considered in most of those cases, revealed the primary or dominant intent of the grantor or the testator to create a fee simple estate in the taker and such intent was recognized and given full and prevailing force and effect in the determination of the estate created by the instrument under consideration. In the Ogden case, quoting from the opinion in the Morgan case, this Court said: "If the primary or dominant intent be to create a life estate, then such intent will prevail over words indicating an absolute and unlimited power of disposition; and vice versa, if the absolute and unlimited power of disposition appears to be the primary or dominant intent of the instrument, then a fee simple estate will be created."
The contention of the state tax commissioner that the residuary clause contains a limitation over after the creation of a fee simple estate in the wife is the converse of the holding in the cited cases that a designated life estate, followed by an unlimited power of disposition, was elevated to a fee simple estate and that a fee simple estate was created in each instance by the provisions of the instrument. If, as the state tax commissioner contends, the wife was given a fee simple estate, the most complete and comprehensive estate known to the law, obviously such estate could not be enlarged by any subsequent provision. The residuary clause here under consideration contains, expressly or by implication, neither a power to use or consume, in whole or in part, nor a power of disposition, in connection with property given or conveyed to the first taker; and in that respect its provisions are entirely unlike the provisions considered in the cited cases. As already indicated, the meaning and the effect of the technical terms "absolutely in fee simple" in the residuary clause are here *739 involved whereas no question of the meaning of the technical terms "in fee simple" was presented in any of the cited cases, although the word "descend" was considered but was not given its technical meaning in the Brookover case. And finally, the intention of the testator, as expressed in the residuary clause and determined from the will in its entirety considered in the light of the circumstances surrounding him when he made his will, is utterly unlike and entirely different from the intention of the grantor or the testator as expressed in the instrument and as determined by the court in each of the foregoing cases. Because of these distinctions between the case at bar and each of the cited cases, the holding in any of them does not apply to or control the decision in this case in the construction of the residuary clause of the will of F. C. H. Schwertfeger.
In Smith v. Smith, 134 W.Va. 842, 62 S.E.2d 347; Wiant, Admr. v. Lynch, 104 W.Va. 507, 140 S.E. 487; Wise v. Hinegardner, 97 W.Va. 587, 125 S.E. 579; Kesterson v. Brown, 94 W.Va. 447, 119 S.E. 677; Stout v. Clifford, 70 W.Va. 178, 73 S.E. 316, and Behrens v. Baumann, 66 W.Va. 56, 66 S.E. 5, 27 L.R.A.,N.S., 1092, which are likewise distinguishable from the cases cited by the state tax commissioner, this Court held that the gift of a life estate, coupled with a restricted or limited power of disposal, or the gift of property to a wife with the right to use it for maintenance and support or with the provision that if any of such property "is left" after her death it should be divided equally between the children of the testator, constituted only a life estate in the first taker.
The holding in Woodbridge v. Woodbridge, 88 W.Va. 187, 106 S.E. 437, is contrary to the holding in Morgan v. Morgan, 60 W.Va. 327, 55 S.E. 389, 19 Ann.Cas. 943, and the other like cases cited by the state tax commissioner. In the Woodbridge case the will gave the husband of the testatrix all her estate as long as he should live with the right to use and enjoy the income and, should he deem it proper, to sell the property for his benefit or to increase the income, if he should survive the testatrix. This Court held that by that provision the husband received only a life estate in the property notwithstanding the power given him to sell it for his benefit or to increase the income if he should deem it proper to do so and should survive the testatrix.
The state tax commissioner also takes the position that the wife of the testator was given an estate in fee simple in the residue of his estate by the words "absolutely in fee simple" in the residuary clause and that such estate, having been thus created, can not be removed, reduced or limited by the later provision that after the death of the wife the residue should be divided equally between the three daughters. To sustain that position he cites Brookover v. Grimm, 118 W.Va. 227, 190 S.E. 697; Totten v. Dawson, 104 W.Va. 274, 139 S.E. 858; Rau v. Krepps, 101 W.Va. 344, 133 S.E. 508, and Bell's Admr. v. Humphrey, 8 W.Va. 1. A well established rule in the construction of a will is that a gift in fee simple, unequivocally made in one clause can not be taken away or limited by a subsequent clause, except by provisions which are equally as clear and decisive as the words of donation. Davis v. Davis, 118 W.Va. 328, 190 S.E. 331; Rau v. Krepps, 101 W.Va. 344, 133 S.E. 508; Eary v. Raines, 73 W.Va. 513, 80 S.E. 806; LeSage v. LeSage, 52 W.Va. 323, 43 S.E. 137. That rule, which was recognized and applied in the cases cited by the state tax commissioner, has no application to the residuary clause of the will here involved and the holding in those cases on that point does not govern or control the decision in this case, for the reason, as previously indicated, that the intention of the testator, as determined from the language of the will in its entirety considered in the light of the surrounding circumstances when the will was made, was not to create in the wife an estate in fee simple in the residue of his property but instead was to give her an *740 estate for life in such residue with a remainder in fee simple to his daughters in equal shares. As the testator did not intend to create a fee simple estate in his wife no estate of that character was created by the residuary clause of the will and no such estate was removed, cut down or limited by the subsequent provision in favor of the three daughters of the testator. If, however, the estate unequivocally given the wife by the words "absolutely in fee simple" could be considered a fee simple estate, and the foregoing rule of construction would apply, the subsequent provision "after the death of my said Dear wife, the rest and residue of my real and personal property shall be devided between my said three daughters share and share a like.", being equally as clear and decisive, would, under the rule, constitute a valid limitation which would prevail and take away or limit such fee simple estate.
Another rule of construction of a will, if applicable to the provisions of the residuary clause, lends support to the construction placed upon that clause that it gives the residue of the estate of the testator to his wife for life with a remainder to the three daughters in equal shares. That rule, promulgated by Jarman, stated in the note to Section 492, 1 Schouler on Wills, Fifth Edition, and quoted in the opinion in Wise v. Hinegardner, 97 W.Va. 587, 125 S.E. 579, is "That all parts of a will are to be construed in relation to each other, and so as, if possible, to form one consistent whole; but where several parts are absolutely irreconcilable, the latter must prevail." See also Totten v. Dawson, 104 W.Va. 274, 139 S.E. 858; Woodbridge v. Woodbridge, 88 W.Va. 187, 106 S.E. 437. If the provisions of the residuary clause relating to the estate given the wife and the estate given the three daughters are inconsistent, repugnant, and absolutely irreconcilable, under the foregoing rule, the last provision should prevail and the effect of the clause would be to create a life estate in the wife with a remainder in fee simple to the three daughters in equal shares.
The motion to affirm is sustained and the judgment of the Circuit Court of Ohio County is affirmed.
Affirmed.